CHARLES KENNEDY *vs.* ST. PAUL CITY RAILWAY CO.

Argued Oct. 18, 1894. Modified Nov. 5, 1894.

No. 8939.

**Verdict sustained by the evidence.**

*Held,* that the evidence was sufficient to justify the verdict upon the issues as to defendant's negligence and plaintiff's contributory negligence.

**Damages Excessive.**

But *held,* also, that the damages awarded were excessive.

**New trial denied on condition.**

Order denying a new trial denied on condition that plaintiff consent to remit $1,000.

Appeal by defendant, the St. Paul City Railway Company, from an order of the District Court of Ramsey County, *Chas. E. Otis,* J., made January 22, 1894, denying its motion for a new trial.

April 28, 1893, the plaintiff Charles Kennedy was a laundryman. He undertook to drive his laundry wagon across the street railway tracks in Wabasha street, between Eighth and Ninth streets, St. Paul. An electric street car struck his laundry wagon and over-set it and hurt plaintiff's left foot. He brought this action to recover damages claiming he was exercising due care and that defendant's motoneer was careless and negligent and caused his injury. Plaintiff obtained a verdict for $3,100. Defendant moved for a new trial. Being denied it appeals. The discussion here was mainly on the evidence, whether or not it supported the verdict.

*Munn, Boyesen & Thygeson,* for appellant.

There is no testimony in this case to show that the bell on the street car was not rung. The negative testimony of witnesses, that

they did not hear the bell, is not sufficient. It must further appear that they listened, that their attention was attracted to whether or not the bell was rung. This negative testimony in this case is overcome by positive testimony of three witnesses. *Moran* v. *Eastern Ry. Co.*, 48 Minn. 46; *Stitt* v. *Huidekopers*, 17 Wall. 384; *Bohan* v. *Milwaukee, L. S. & W. Ry. Co.*, 61 Wis. 391; *Culhane* v. *New York Cent. & H. R. R. Co.*, 60 N. Y. 133; *McKeever* v. *New York Cent. & H. R. R. Co.*, 88 N. Y. 667.

The accident occurred between street crossings and this defendant owed no duty to ring the bell until the defendant's motoneer saw that plaintiff would drive upon the track. He had a right to believe that plaintiff would remain or drive in the space between the track and the curbstone, and he was not chargeable with knowledge that plaintiff would drive upon the track until plaintiff did so. And it does not appear that, after discovering plaintiff would cross the track, it was possible for the motoneer to prevent the collision. Booth's Street Railway Law, § 300.

To plaintiff, who knew that the car was about to approach, that it might start at any moment, that it would start as soon as it had taken on its passengers, however few they might be, defendant owed no duty to ring the bell. The testimony in this case shows that plaintiff was guilty of contributory negligence. He should have looked before driving upon the track. *Thomas* v. *Citizens' Pass. Ry. Co.*, 132 Pa. St. 504; *Ehrisman* v. *East Harrisburg City Pass. Ry. Co.*, 150 Pa. St. 180; *Wheelahan* v. *Philadelphia T. Co.*, 150 Pa. St. 187; *Warner* v. *People's St. Ry. Co.*, 141 Pa. St. 615; *Carson* v. *Federal St. & P. V. P. Ry. Co.*, 147 Pa. St. 219; *Adolph* v. *Central Park, N. & E. Riv. R. Co.*, 76 N. Y. 530; *Dorman* v. *Broadway R. Co.*, 117 N. Y. 655; *Kelly* v. *Hendrie*, 26 Mich. 255; *Wood* v. *Detroit City Street Ry. Co.*, 52 Mich. 402; *Miller* v. *St. Paul City Ry. Co.*, 42 Minn. 454; *Reed* v. *Minneapolis Street Ry. Co.*, 34 Minn. 557; *Donnelly* v. *Brooklyn City Ry. Co.*, 109 N. Y. 16; *Chicago W. D. Ry. Co.* v. *Bert*, 69 Ill. 388; *Belton* v. *Baxter*, 54 N. Y. 245; *Winter* v. *Federal St. & P. V. P. Ry. Co.*, 153 Pa. St. 26; *Hegan* v. *Eighth Ave. R. Co.*, 15 N. Y. 380; *Johnson* v. *Canal, &c., Ry. Co.*, 27 La. An. 53; *Barker* v. *Savage*, 45 N. Y. 191; *Harris* v. *Commercial Ice Co.*, 153 Pa. St. 278.

A motorman on an electric street car is not guilty of negligence in failing to anticipate that the driver of a wagon traveling along the street in the same direction with the car by the side of the track would suddenly undertake to cross the track in front of the car, but he has a right to presume that such driver will continue in the same direction he is moving. *Christenson* v. *Union Trunk Line*, 6 Wash. 75.

By the exercise of reasonable care plaintiff could have seen the car approaching and he was chargeable with negligence in failing to exercise such care. Plaintiff was not at liberty to take the chances of crossing the track, relying upon the possibility of getting over unharmed, or relying upon the probability of the motoneer's ability to stop the car. *McClain* v. *Brooklyn City Ry. Co.*, 116 N. Y. 459; *Barker* v. *Savage*, 45 N. Y. 191; *Belton* v. *Baxter*, 54 N. Y. 245; *Davenport* v. *Brooklyn City Ry. Co.*, 100 N. Y. 632.

In case of a collision between a street car and a private vehicle, driving on the street in the same direction, the presumption is that the driver of the private vehicle has been negligent, because he is not confined to a fixed track as is the car. Booth Street Railway Law, § 323; *Suydam* v. *Grand St. & N. R. Co.*, 41 Barb. 375.

Between street crossings street cars have greater rights than at street crossings. *O'Neil* v. *Dry-Dock, E. B. & B. R. Co.*, 129 N. Y. 125; *Kelly* v. *Hendrie*, 26 Mich. 255; Booth Street Railway Law, § 304; *Watson* v. *Minneapolis Street Ry. Co.*, 53 Minn. 551.

The sole burden of exercising care does not rest upon the street car company. A traveler or wayfarer upon the street must exercise at least as much care as is required of the company. *Meyer* v. *Lindell Ry. Co.*, 6 Mo. App. 27; *Unger* v. *Forty Second St., &c., R. Co.*, 51 N. Y. 497; *Roller* v. *Sutter St. R. Co.*, 66 Cal. 230; *Thomas* v. *Citizens' Pass. Ry. Co.*, 132 Pa. St. 504.

*J. C. Mangan*, and *John D. O'Brien*, for respondent.

There is evidence to sustain the allegation that defendant's motoneer was negligent and that plaintiff was not. The rule governing this class of cases is well settled in this court. *Watson* v. *Minneapolis Street Ry. Co.*, 53 Minn. 551; *Shea* v. *St. Paul City Ry. Co.*, 50 Minn. 395.

The facts bring the case entirely outside the theory upon which the verdict was rendered in the case of *Slette* v. *Great Northern Ry. Co.*, 53 Minn. 341.

The alleged newly discovered evidence was merely cumulative and would not, if given, affect the result. *Cummings* v. *Taylor*, 24 Minn 429.

MITCHELL, J. This is one of a class of cases frequently appealed to this court, involving issues purely of fact, where we have considerable doubt whether those issues were rightly decided, but the evidence is such that an appellate court would not be warranted in disturbing the verdict of the jury. In determining whether the injury to the plaintiff was caused by his own negligence or by that of defendant's servants, the most important, if not the decisive, question was whether the plaintiff attempted to drive across the railway track in front of an approaching car already in motion, or whether, when he drove upon the track, the car was standing still, but was afterwards started, and struck his vehicle before he had time to get across. If the former was the fact, he could not recover, for it would be the grossest kind of negligence to attempt to drive across the track right in front of an approaching car, and within so short a distance of it that the motoneer could not, in the exercise of reasonable diligence, stop the car in time to prevent a collision. On the other hand, if the car was standing still when plaintiff started across the track, we think that, notwithstanding the fact that he knew that the car would shortly start, the questions of the motoneer's negligence and of plaintiff's contributory negligence were for the jury.

While we are impressed, as the trial judge seems to have been, with the feeling that the evidence of contributory negligence was quite strong, yet, if plaintiff is to be believed (which was a question for the jury), his act was not an attempt to swing across the track in front of an approaching car, nor an attempt to cross heedlessly, without regard to existing conditions, but an attempt to cross in front of a car that was standing still, and which did not start until his horse was upon the track. In view of the relative rights of street cars and other vehicles in the streets, as defined by this court in *Shea* v. *St. Paul City Ry. Co.*, 50 Minn. 395, (52 N. W. 902,) and

*Watson* v. *Minneapolis Street Ry. Co.*, 53 Minn. 551, (55 N. W. 742,) and in view of the further well-known fact that, in many of our city thoroughfares, street cars pass so frequently that if a person had no right to cross in front of a standing car he might have to wait indefinitely, no court could say, as a matter of law, that to do so was negligence. Other vehicles being in the lawful use of the street, as well as street cars, reasonable care would require that the motoneer, before starting his car, should look to see that the track immediately in front of him is clear, and, if he see any one then crossing it, to wait long enough to avoid a collision.

Taking, as a basis of calculation, the testimony of witnesses as to the relative rates of speed of the car and of plaintiff's vehicle, and the distance traveled by each from its starting point, counsel for defendant attempts a mathematical demonstration that the car must have been in motion before plaintiff drove upon the track. This kind of an argument is frequently resorted to in this class of cases, and, like any other mathematical demonstration, would be conclusive, if it was certain that the premises assumed were correct. But experience teaches that witnesses are usually exceedingly inaccurate in their estimates of short distances and short periods of time, as well as of rates of speed, and hence arguments founded on such bases are often fallacious, and seldom conclusive.

Defendant also claims that the only allegation of negligence in the complaint is the failure of the motoneer to ring the gong before starting the car, and that upon that issue the plaintiff failed to establish his case by evidence. Without stopping to consider whether this is the correct construction of the language of the complaint, it is enough to say that it is apparent from the record that the case was not tried upon any such narrow construction of the pleading. As the case was tried and submitted to the jury, particularly in the charge of the court, it is clear that the alleged failure to ring the gong was only one, and that not the most important, of the issues litigated by consent of the parties.

We agree with the trial judge that the newly-discovered evidence was merely cumulative, and are of opinion that there was no error in his refusing a new trial on that ground.

2. But, while we are of opinion that we cannot interfere with the finding of the jury on the issues of negligence and contributory

negligence, yet we are clearly of opinion that the damages awarded are excessive. We appreciate the extreme caution that courts, especially appellate courts, should exercise in interfering with the amount of damages awarded by juries in this class of cases; but that there is a limit beyond which, if a jury goes, the court ought to interfere, is well settled. There is such a tendency on the part of juries, at least in certain classes of cases, to award excessive damages, that, if courts did not sometimes exercise their corrective power, great wrongs would be committed under the guise of judicial forms.

It appears from the evidence that, when the car (which by this time had been slowed up to a low rate of speed) collided with plaintiff's wagon, his foot was caught between the car and the wagon. The only injury plaintiff sustained was to this foot. The only important evidence as to the nature and extent of these injuries is the testimony of the plaintiff himself, and of his attending physician. Both agree that no bones were broken, but that the foot, particularly the heel, was quite seriously bruised, and swelled up badly, and was quite painful. It was some six weeks before plaintiff could walk on it, during which time he had to use crutches, and was incapacitated in whole or in part from attending to his business, which was that of a laundryman. The plaintiff testified that at the time of the trial, which was about six months after the injury, there was a numbness or lack of feeling in some of his toes, and that his foot or ankle still pained him when he set his weight down on it, and that it pained him quite badly at certain changes of the weather.

The physician testified that the foot was badly bruised on both the sides and back of the heel, and that the muscles were contused. He also testified that it was his opinion, in view of the position in which he found the foot, that the ligaments at the side of the heel had been distended or torn from their attachments, and if so they would never come back to their place, unless new tissue be formed, and as a consequence the ankle would be permanently weakened, or its movement impaired so as to be liable to turn to one side, particularly in fast walking or jumping. Here, then, we have a case of badly-bruised foot (but no bones broken), which incapacitated plaintiff from walking on it, and compelled him to use crutches

for six or eight weeks, and which was quite painful, and the pain from which still troubled him somewhat at times at the date of the trial. The only claim of permanent injury is that the ankle will be weakened on account of supposed injury to the ligaments on the sides, and this is wholly based on the mere opinion of the physician—First, that the ligaments were injured; and, second, that such injury would render the ankle permanently weak. Aside from the generally uncertain character of expert evidence of this kind, it is not unfair to say that the evidence of this physician on the subject was peculiarly vague and unsatisfactory. On this slender foundation of evidence does the claim for permanent injury rest. The jury awarded plaintiff $3,100, made up, as we assume, of $50 for damage to his wagon, $50 for his physician's bill, and $3,000 for the injury.

Conceding that the evidence establishes the fact that the ankle will be permanently weaker than before, there is no evidence that this does or will diminish plaintiff's earning capacity, or at all interfere with his going about his business, or with his walking in any usual or ordinary way. If $3,000 is to be allowed for such an injury, at what sums shall the loss of a foot, a hand, a leg, or arm be estimated? At the same ratio such losses would warrant recoveries far beyond any precedent, and which would be liable to bankrupt any business in the country.

The proper test is not what counsel for plaintiff suggested on the argument, viz. for what sum would any one be willing to suffer such an injury. Most people would be unwilling to lose a limb for all the gold in the world. But the law does not assume to compensate injured persons on any such basis. There is a sense in which no amount of money will compensate a man for a serious, permanent, personal injury. But all the law attempts to do is to compensate him as far as money will do it; and for manifest, practical considerations, there must be some reasonable limit to the amount of this compensation.

Our conclusion is that, giving the plaintiff the benefit of everything which the evidence at all tends to prove, and allowing him the largest amount which that evidence would warrant, a verdict in excess of $2,100 ought not to be sustained.

Ordered, that a new trial be granted, unless the plaintiff, within

twenty days after filing the remittitur in the District Court, voluntarily consents to remit all of the verdict in excess of $2,100, in which event a new trial will be denied.

---

## ON REHEARING.

(Nov. 10, 1894.)

PER CURIAM. This motion is made solely on the ground that the court overlooked defendant's seventh assignment of error, to wit, that the trial court erred in refusing to instruct the jury "that there is no evidence to establish the failure of defendant to ring the bell;" that is, the motoneer's gong.

While the evidence on this point was not of the most satisfactory nature, yet we think it made a case for the jury.

The evidence on behalf of the plaintiff was not wholly of the ordinary merely negative character. For example, one bystander testified that he heard two rings of the conductor's small bell. but heard no gong sounded by the motoneer.

Motion denied.

(Opinion published 60 N. W. 810.)