Howard, J.
The evidence in this case shows that appellant has a double-track street railroad on Second street, in the city of Evansville; that appellee’s decedent, Joseph Bradt, was a passenger on car 70 of said line, going south, on the evening of the accident,- December 20, 1892; that as said car approached the north crossing of Jefferson avenue, about 6 o’clock that evening, it slowed up, preparatory to coming to a full stop at the south crossing over said avenue; that when the car reached the first, or north crossing, it was already moving quite slowly, and the decedent *408 stepped off, his home being on the north side of the avenue and east of Second street; that the door by which he left the car was at the rear end, and the steps descended to the west side of the car; that to reach his home he would, therefore, have to cross both tracks of the street railroad; that car 70 came to a full stop when it reached the south side of Jefferson avenue; that after car 70 had come to a full stop, car 72 was seen half a block south coming north on the other track; that from one crossing to the other, on Jefferson avenue, is about fifty feet; that one of the passengers who got off car 70 at the south crossing, passed around and to the east side of the car, intending to cross the tracks just as car 72 rushed by him to the north; that immediately thereafter a cry was raised that a man was struck by car 72; that decedent was found insensible and bleeding, forty-five feet north of the north crossing, lying in the five-foot space between the two lines of track; that car 72 went over the crossings at an unusual rate of speed, the usual rate for the whole trip being from twelve to fourteen miles an hour; that the motorman of car 72 had received orders to slow up his car at crossings whenever a car was standing on the other track taking on or letting off passengers, but did not do so on this occasion, although car 70 was standing on the south crossing, and it was well known that at this crossing many persons were in the habit of getting off and on the street cars. It was already dark that evening. Car 72 had a headlight and was lit up by electricity. Joseph Bradt died without recovering consciousness. He was a sober and industrious man, and his usual way home was by this street car line. He was foreman in the Heilman Plow Company’s works, situated over a mile from the crossing. The president of the company testified that Mr. Bradt was somewhat disturbed in *409 mind as he left the factory, having jnst learned by telephone that his wife had run the needle of her sewing machine into her finger, and that he had brought a pair of tweezers with him to extract the needle.
Appellee contends that this evidence shows negligence on the part of the motorman of car 72, and also that Joseph Bradt was killed by reason of such negligence, and without fault of his own. Appellant contends that even if the motorman was negligent, yet that Joseph Bradt having left car 70 at the north crossing, was not, at the time of the accident, a passenger of the company’s, and, therefore, even if the motorman of car 72 was negligent, in disobeying the order requiring him to slow np at the crossing, this negligence did not violate any duty owed to Mr. Bradt as a passenger; and, moreover, that the evidence does not show that the decedent was himself free from negligence, on his part, contributing to his death.
The rules that govern as to the crossing of steam railroads by travelers upon the highway are not fully applicable to street railroad crossings in cities. Foot passengers have special rights at street crossings, which crossings are, in effect, but extensions of the sidewalks over the streets. And, although a street car or other vehicle moving along the street has a right, also, to pass over the crossing, yet, as has been well said, it behooves the motorman of the electric car, or the driver of any other vehicle, to be vigilant in approaching a cross-walk, so as to avoid injury to a foot passenger, even though the latter may be careless in hurrying over. In a city, the people must hasten to their business, and cannot wait until all pass by who wish to use the roadway over which they must cross. The rule, therefore, to stop and look and listen cannot apply as it does to the crossing of a steam railroad track. It is, of course, true here, as elsewhere, that *410 every one must use his senses of sight, hearing and feeling, and so avoid injury to himself or to others; but it is also true that this rule applies to the controller of the vehicle on the street quite as much as to the foot passenger on the crossing. The street car, therefore, ought to be under full control as it passes over the crossing; and, as said in Cincinnati Street R. W. Co. v. Whitcomb, 66 Fed. 915, it is not the law that persons crossing street railway tracks in a city are obliged to stop, as well as look and listen, before going over such tracks, unless there is some circumstance which would make it ordinarily prudent to do so. Other authorities showing that the rules which must be observed in crossing the tracks of the steam railroads do not strictly apply to the crossing of electric or cable car lines in cities, are, Young v. Atlantic Ave. R. R. Co., 31 N. Y. Supp. 441; Kennedy v. Metropolitan Street R. W. Co., 32 N. Y. Supp. 153; Kennedy v. St. Paul City R. W. Co., 59 Minn. 45, 60 N. W. 810; Holmgren v. Twin City Rapid Transit Co., 61 Minn. 85, 63 N. W. 270; Citizens' Street R. R. Co. v. Spahr, 7 Ind. App. 23; Citizens' Street R. W. Co. v. Albright, 14 Ind. App. 433.
There can be little doubt that the running of car 72 at the unusual rate it ran over the crossing of Jefferson avenue on this occasion was negligence; so that if the death of Joseph Bradt was thereby caused, without fault on his part, the appellant would be liable. The usual rate of travel on this line was from twelve to fourteen miles an hour; and the more rapid rate at which car 72 rushed over this much frequented crossing was little less than wanton and reckless disregard of human life, to say nothing of the rights of foot passengers and of the rights of those who took passage on or left the street cars at this point.
In Cincinnati Street R. W. Co. v. Snell, 54 Ohio St. *411 197, 43 N. E. 207, the Supreme Court of Ohio held that when a street railway company operating a double-track road discharges a passenger at a street crossipg, having reason to know that such passenger, in order to reach his destination, must cross its tracks, it is the duty of the company to regard the rights of the passenger while on the crossing, and to control the speed of cars on its tracks and give such warning of their approach as will reasonably protect the passenger from injury; that omission of such duty is negligence, and a person injured by reason thereof may maintain an action against the company for damages, unless prevented by his own negligence, contributing to the injury.
Had Joseph Bradt, therefore, got off car 70 at the south crossing of Jefferson avenue, and, relying on the rule of the company to slow up the other car at that point, turned around to cross the tracks of the street railroad on his way to his home, and then been struck by car 72, which at that time was coming north at the rate shown in the evidence, we should have no hestitation in holding that his administrator should recover for his death caused thereby. The decedentwould have had a right to rely upon the custom of the company to allow the passengers alighting from its car, time to cross the street to their place of destination.
But the decedent did not alight at the south crossing, but at the north. Before his car reached the north crossing it had already begun to slow up for the usual place of stopping at the south, or further crossing. By the time it reached the first, or north crossing, it was moving so slowly that he had no trouble in stepping off, as he did; that being the side of the street on which he lived. The ear then proceeded still .more slowly across Jefferson avenue, a distance of about fifty feet, where it came to a full stop. After it *412 stopped, car 72 was seen coming from the south on the other track, about half a block, or 150 feet away. It is true that car 72 was coming at an unusual and very rapid rate, a negligent rate, so far as the crossing was concerned; yet, the car was still 200 feet away from the place where the decedent alighted from car 70; and, in addition, it does not seem reasonable that the decedent should have stood on the spot where he alighted for the whole time that his own car 70 had been slowly moving over from the north to the south crossing. Besides, it was a still evening,, and already dark. Car 70 was standing still, and the noise of the coming car 72 must have been distinctly and easily heard; while its headlight shone directly north, and the inside was lit up with electricity. It seems impossible to conceive that the decedent could have stood during all this period from the time car 70 left him at the north crossing until car 72 reached the same crossing and struck him. He was in a hurry to reach home to relieve his wife of the painful injury to her hand. He had simply to cross two tracks, about fifteen feet, while his own car was slowly going fifty feet and the other car coming on 200 feet more. The case is not at all the same as if he had alighted from car 70 at the south crossing and been caught by car 72 as he turned around to go over the tracks behind car 70. In the latter case he might not see or hear car 72, and would have good right, even if he knew it was coming, to believe that he should have time to cross the tracks before that car could reach the crossing. In the case before us, his time was greatly increased, as were his opportunities to see and hear the coming car.
. Much is made by counsel for appellee of the facf that it was the custom at this crossing for cars to stop when meeting a car coming from the other direction, especially when the latter was standing to deliver or *413 receive passengers; that the motorman of can 72 had received explicit directions to slow np at this crossing, and that the decedent had a right, therefore, to act upon the belief that car 72 would stop at the south crossing. The trouble with this contention is that there is not one particle of evidence to show that the decedent had any knowledge of such custom, or of the order to the motorman, or that he placed any reliance on either.
The evidence is absolutely silent as to the acts of the decedent from the time he stepped off car 70 until he was struck by car 72. It is not even clear that he was at the crossing when he was struck. He was found about forty-five feet north of the crossing, in the space between the two lines of track. Whether he had walked up on the west side of the tracks and was proceeding to cross to ^ the east when he was struck, or whether he was struck at the crossing and carried north by the car and thrown where he was found, is altogether uncertain.
It is true that but little evidence may be needed to negative contributory negligence on the part of one injured by the act of another. The instincts of self-preservation and the desire to avoid injury or pain to one’s self might be sufficient, in connection with some slight positive testimony, whether circumstantial or otherwise, to enable us to conclude that one who suffers an injury did not help to bring it upon himself. But there must be some evidence of due care. So many instances are known to us of lack of prudence, forgetfulness, absent-mindedness, or like want of ordinary care, on the part of otherwise prudent and thoughtful persons, that we cannot conclude, without some facts proved, some circumstances shown, that a person’s injury was not brought upon him through his own inexcusable fault. Accordingly, the rule *414 lias become firmly established that one who seeks damages for injury caused by another must show that he was not himself guilty of negligence contributing to the injury. Here, there is no such showing whatever. Without at least some slight proof of want of contributory negligence on the part of the decedent there can be no recovery. Toledo, etc., R. W. Co. v. Brannagan 75 Ind. 490; Indiana, etc., R. W. Co. v. Greene, 106 Ind. 279; Cincinnati, etc., R. W. Co. v. Howard, 124 Ind. 280; Pittsburgh, etc., R. W. Co. v. Bennett, 9 Ind. App. 92; Weston v. City of Troy, 139 N. Y. 281; Cordell v. N. Y. Central, etc., R. R. Co., 75 N. Y. 330.
In the-last case cited it wap said: “When a person has been killed at a railroad crossing, and there are no witnesses of the accident, the circumstances must be such as to show that the deceased exercised proper care for his own safety. When the circumstances point just as much to the negligence of the deceased as to its absence, or point in neither direction, the plaintiff should be nonsuited. The presumption that every person will take care of himself from regard to his own life and safety, cannot take the place of proof. Because human experience shows that persons exposed to danger will frequently forego the ordinary precautions of safety.”
While we are, therefore, of opinion that the evidence shows that the appellant was guilty of negligence in the reckless manner of running car 72 over the crossing, yet, we are equally clear that there is nothing to show that the decedent was not himself guilty of negligence contributing to his own injury and death.
The judgment is reversed, with directions to grant a new trial.