## Minnich, Appellant, *v.* Wright.

*Negligence—Street railways—Collision between sleigh and car—Contributory negligence.*

In an action to recover damages for the death of plaintiff's husband, it appeared that the deceased, following the rule of the road, was driving a sleigh northward on the east track of defendant's double track railway on a highway. There was snow on the ground, and a sweeper had thrown it on either side of the track. The place of the accident was at the middle of a curve in a highway. In the arc of the circle of this curve opposite the place of the accident there was a schoolhouse in front of which were trees, and around which was a fence. These objects obstructed the view of both

the deceased and the motorman. The deceased in looking across the curve could only see the top of a car, and could not determine on which track the car was approaching. The car which struck him approached on the same track on which he was driving, thus proceeding on a track contrary to the usual custom of travel. The motorman testified that he did not see the sleigh until he had turned the curve, and was within sixty or seventy feet of it. This was too late for either party to have avoided the collision. *Held*, that it was error for the court to rule as a matter of law that the deceased was guilty of contributory negligence.

Argued Jan. 29, 1906. Appeal, No. 322, Jan. T., 1905, by plaintiff, from judgment of C. P. Lehigh Co., Sept. T., 1904, No. 107, on verdict for defendant in case of Emma P. Minnich v. Robert E. Wright, Charles M. Bates and George W. Norris, Receivers of the Lehigh Valley Traction Company. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and STEWART, JJ. Reversed.

Trespass to recover damages for death of plaintiff's husband. Before HEYDT, P. J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

The court directed a verdict for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in entering judgment for defendant.

*Preston K. Erdman* and *Thos. F. Diefenderfer*, for appellant.—It is only in clear cases that the court can say that a person has gone on in the face of obvious danger or failed to observe it when he should have done so: Cromley v. R. R. Co., 208 Pa. 445; McFarland v. Traction Co., 204 Pa. 423; Fenner v. Traction Co., 202 Pa. 365.

*Arthur G. Dewalt*, for appellees.—We respectfully submit that under the facts and the law as given in the following cases the learned judge below was correct in his ruling: Rees v. Walton, 49 P. L. J. 200; Rowland v. Wanamaker, 193 Pa. 598; Taylor v. Traction Co., 20 Pa. C. C. Rep. 238; Trout v. Ry. Co., 13 Pa. Superior Ct. 17; Smith v. Traction Co., 187 Pa. 110; Burke v. Traction Co., 198 Pa. 497; Thatcher v. Traction Co., 166 Pa. 66; Tyson v. Traction Co., 199 Pa. 264; Keenan v. Traction Co., 202 Pa. 107; Moser v. Union

Traction Co., 205 Pa. 481 ; Lyons v. Traction Co., 209 Pa. 72 ; Phillips v. Ry. Co., 190 Pa. 222 ; Ahern v. Melvin, 21 Pa. Superior Ct. 462.

OPINION BY MR. JUSTICE MESTREZAT, February 26, 1906 :

We think the learned judge of the court below was in error in directing a verdict for the defendants, the appellees, on the ground that the death of Valentine Minnich was caused by his own negligence. The question was one of fact, and not so clear, under the evidence produced, that the court was justified in determining it as a matter of law.

We quite agree with the learned judge that if Minnich "looked and saw the car and drove into it deliberately, then he was guilty of contributory negligence ; and that if he did not look where he was going, and was driving on this track, then he was guilty of such contributory negligence that he cannot recover." But we do not agree with the learned judge's other conclusion in this connection that the evidence was so clear and convincing that the court could as a matter of law hold that " if he had looked he could have seen this car coming." To convict Minnich of negligence it must appear that he was not exercising care in driving north on the car track, that if he had looked ahead of him he could have seen the approaching car in time to turn from the track and avoid the collision.

At the time of the accident a heavy snow had fallen, and the appellees had used their snowplow in clearing their track, throwing the snow to either side of it. It is not negligence in itself for a driver of a vehicle to use a car track, and especially was that true in view of the physical conditions existing at the place where Minnich met his death. Observing the rule of the road as recognized in this country, he was driving north on the east track of the two parallel tracks of the defendants' electric railway line. It was his duty to watch for an approaching car, and if he saw one on the track on which he was driving, he was required to leave the track and permit it to pass. The right of an electric railway company to use its tracks, although laid on a public highway, is superior to that of a pedestrian or an individual driving a team. If, therefore, as alleged by the appellees, the deceased saw, or could by the

exercise of proper care have seen, their car, he should have turned from the track, or if that was not practicable by reason of existing conditions, he should have warned the motorman of the fact. If the deceased failed in this duty he was negligent. But if he had exercised the care required of him under the circumstances, could he have seen that the car with which he collided was approaching on the track on which he was traveling in time to avoid the collision? The answer to that question determines the character of the deceased's conduct on the occasion, whether it was negligent or not. And, as we have said, the evidence did not warrant the court in determining it as a matter of law.

The place of the accident was at the middle of a curve in the highway, and the character of the curve is indicated to some extent by the fact that the motorman says he threw off the power and slacked the speed so his car would not run off the curve. In the arc of the circle opposite the place of the accident was a schoolhouse in the front of which were trees and around which was a fence. These objects obtructed the motorman's view of the sleigh and the horses, and also the deceased's view of the approaching car. The motorman testifies that he did not see the team driven by the deceased until he had turned the curve and was within sixty or seventy feet of it, and that about four seconds elapsed between his first sight of the team and the time of the collision. It is admitted that at that time it was too late for either party to have avoided the collision. It is contended by the appellees that while this is true, the deceased could have seen the car prior to that time by reason of his elevated position on the seat of the sleigh. That, however, was an open question under the evidence, and depended upon the height of the seat, the character of the curve and the obstructions which were between the driver of the sleigh and the approaching car. These matters must be made to appear by the testimony of witnesses whose credibility was for the jury. But, if under the circumstances the driver of the team could have seen the car when the motorman could not have seen the team, it is apparent, we think, that the driver could have seen only the top of the car. His view would have been across the arc of the circle, and not along the track upon which the car was approaching. This fact is important

in ascertaining whether the driver was able to determine on which track the car was approaching. If we assume that the deceased saw a car approaching, was he not justified in believing, and did, he not believe, that it was on the west track, the one on which a car traveling south was accustomed to, and usually did, travel? Had he reason to believe from what his view of the car disclosed that it was approaching on the east or north bound track, or was he warranted in believing under existing conditions, that the car was traveling on the west or south-bound track, the one on which, under the rules of the road as well understood in this country, an electric car is presumed to, and usually does, travel? These were questions for the jury, and the answers to them would doubtless control the jury's conclusion. If the car had been approaching on the south-bound track, there would have been no occasion for the deceased to leave the north-bound track, and his action in that respect, which as a prudent and careful man he should have taken, would have depended upon what his view of the car disclosed to him. If, however, he saw, before he rounded the curve, that the car was traveling on the north-bound track, his duty required him, if conditions permitted, to turn from the track, and failing to observe this duty would convict him of negligence.

As the learned judge ruled the case on the negligence of the deceased alone, we need not discuss the negligence of the appellees. Their car, at the time of the accident, was not traveling on the track on which it was accustomed to travel and on which persons using the highway had the right to assume it would be traveling when going southward. It had approached a curve where, as the motorman's testimony shows, his view of a team or of an individual approaching him on the same track was limited to a distance of not more than seventy feet. It was the duty of the crew in charge of the car to have observed the care required of them under those circumstances. The rate of speed of the car, determinable from the oral testimony and the effect of its impact with the team, as well as the warning given of the approaching car were questions for the jury.

The judgment of the court below is reversed and a venire facias de novo is awarded.