MARIA BREMER v. ST. PAUL CITY RAILWAY COMPANY.[1]

March 12, 1909.

Nos. 15,810—(118).

**Right of Way—Street Car and Pedestrian.**

A street car company does not acquire by its conferred franchise a servitude or right to priority of way upon the highway, as does an ordinary freight or passenger railway company, by gift, voluntary transfer for consideration, or condemnation with compensation, as to land over which it runs its tracks. A street car and a footman or vehicle have equal rights of the same kind to the concurrent use of the city streets.

**Same.**

The rights and duties of both are reciprocal and mutual. Each is bound to exercise commensurate care in self-protection and in avoiding harm. Such care on the part of the street car company is differentiated from that of an ordinary user of the street, because its tracks make the side movements of its cars impossible, and because it is authorized to operate heavy cars, with powerful motive force, by reason of which the momentum and inertia of its cars differ from that of ordinary vehicles.

**Passing Cars.**

At a street crossing, or at a place used as a street crossing, the motorman in charge of a car approaching one discharging passengers is bound to keep a sharp lookout for passengers or other persons who may attempt to cross the tracks behind the other car, to have his car under such control that he can stop it upon the appearance of danger, and to give such signals as are usually given to protect travelers who are in the exercise of ordinary prudence.

**Same—Duty of Traveler.**

The traveler on the street under such circumstances has the right to rely on the exercise of such care by the motorman, but is required to

[1] Reported in 120 N. W. 382.

exercise due care in protecting himself and in avoiding harm. Such care does not amount to the caution required to be exercised where the highway crosses the track of an ordinary railway. The traveler is not under a hard and fast obligation to stop, or to look and listen.

**Negligence—Question for Jury.**

Where the evidence of the plaintiff shows actual negligence on the part of the company, and the question of contributory negligence of plaintiff depends on a variety of circumstances, from which different minds may reasonably arrive at different conclusions as to whether contributory negligence should be found or not, the question should be submitted to the jury under proper instructions, and it is error in such a case for the court to direct verdict for the defendant.

**Same.**

In this case plaintiff, a passenger on defendant street car company's west-bound car, arrived in daytime at a place not the intersection of streets, but which had been recognized and in this case was recognized by defendant as a place for discharging passengers. She followed another passenger, who had alighted before her, who crossed the track ahead of her in safety. Another car of defendant, which was loaded with crushed rock, passed the car from which plaintiff had alighted, and struck and carried her one hundred feet from the point of collision. There was contradiction in the testimony as to the speed at which it was going and as to whether it gave the usual signals. In an action to recover for consequent personal injuries it is *held* that the questions of defendant's negligence and plaintiff's contributory negligence were for the jury.

Action in the district court for Ramsey county to recover $10,100 damages for personal injuries. The case was tried before Olin B. Lewis, J., and a jury which returned a verdict in favor of plaintiff for $2,000. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*W. D. Dwyer* and *W. R. Duxbury,* for appellant.

*McElwee & Hollihan,* for respondent.

JAGGARD, J.

Plaintiff and respondent, a woman sixty five years of age, was a passenger on a street car of defendant and appellant's railway company. The car stopped at her signal, at a point about half way between two cross streets, where plaintiff had often gone out of the cars to attend to business. Another passenger had left the car in front of her, and

passed behind it. She followed him directly and "wanted to follow him farther on." The car from which she alighted was going west. As she was going diagonally across the street, she was struck by an east-bound work car. She testified: "I heard nothing, no bell and nothing, and it hit me on the legs, and I fell down, and thereafter I didn't know anything any more."

The jury might have inferred that plaintiff collided with the east-bound car at a point four feet back of the fender; but her testimony and the circumstances in connection with the place of fracture and laceration of her right leg and the distance from its fender to the top of the rail were sufficient to have justified a finding that she was struck by the fender in front of the approaching car. It must be here assumed that it so found. The distance between the inside rails of the double tracks was such as to leave a clearance not to exceed eighteen to twenty four inches between the cars when opposite to each other. One of the defendant's witnesses testified that the work car, loaded with crushed rock, was going only three or four miles an hour; but there was also testimony that the usual rate of speed at that point was ten or twelve miles an hour, and that the work car ran one hundred feet after it struck plaintiff. The witness who alighted ahead of plaintiff heard and saw the construction car. Thereupon he "kind of obliqued to the left and crossed the track, at the same time motioned to the party following him and also to the employees with [his] hand like this (indicating), and just about that time the front end of the car came between [him] and the party who followed, * * * the lady, and [he] heard a scream and at the same time * * * the appliance of the emergency brake, or something of that kind."

Other testimony on the point was more favorable to the plaintiff. The jury returned a verdict for plaintiff in the sum of $2,000. This appeal was taken from the order of the trial court denying defendant's motion in the alternative.

Defendant's negligence must be assumed. Its brief does not contend that actionable negligence was not shown. Moreover, as will appear from the consideration of plaintiff's negligence, which immediately follows, the question was for the jury. The only controversy here is whether plaintiff as a matter of law was guilty of contributory negligence.

The primary fallacy, which in fact, although not in phrase, underlies defendant's contention that plaintiff was so guilty, and which is frankly avowed by some authorities cited to sustain it, is that a street railway company has some superior or paramount right on a public street to that of a passenger or driver of vehicles. This view, it is true, is sustained by a more or less clearly defined group of cases which secure to a street car system power to use public streets almost equal to that of a railroad company to use its tracks. For example, see Chicago v. Meinheit, 114 Ill. App. 497; Denver City T. Co. v. Norton, 141 Fed. 599, 73 C. C. A. 1; Gray v. Fort, 198 Pa. St. 184, 47 Atl. 945 (see post); Minnich v. Wright, 214 Pa. St. 201, 63 Atl. 428, and subsequent discussion of rule as to "stop, look, and listen." Three considerations are currently relied upon to confer upon street railways the priority of way, viz., that their tracks necessitate a fixed course, which makes it impossible to turn cars to the side; that such companies are generally authorized to propel heavy cars by powerful motor force, in consequence of which the momentum and inertia of street cars differ from that of ordinary vehicles; and that general convenience demands rapid and undeterred transit by such public service companies. Upon the most casual reflection, however, it will clearly appear that the conclusion does not follow from these premises. Due allowance may be made for all these considerations. The lawful use of streets by street cars on the one part, and by footmen and vehicles on the other, may be differentiated by due reference to these circumstances; and none the less the common-law rights of ordinary users of the highway, though somewhat modified by them, may still be preserved in substance. In other words, the common-law rules as to the use of public highways may be merely adapted to new conditions imposed by the weight, power, and tracks of a street car, its inability to move sidewise, and its momentum.

There is a natural and necessary difference between the fundamental right of an ordinary freight and passenger railroad to its right of way and the right of the street car company to use the streets of a city. The railroad company, by gift, voluntary transfer for consideration, or condemnation with compensation, secures a fee or an incorporeal hereditament, and operates its roads by virtue of ownership; the street car company obtains a privilege to build its tracks and operate its cars

without gift, purchase, or condemnation of land. That privilege creates no new servitude upon the highway, but makes possible an additional use of such highway, consistent with and in furtherance of the purposes of its original dedication. The railroad company may have an estate; the street car company always has a franchise. The lands over which a railroad company builds its road are withdrawn from general or private use; the surface of a street is open to common travel. The way of a railroad company is used by it exclusively, subject to limited rights at public or private crossings; a street is used concurrently by the street car company and by the public. Kinsey v. Union, 169 Ind. 563, 81 N. E. 922; Indianapolis v. Kidd, 167 Ind. 402, 79 N. E. 347, 7 L. R. A. (N. S.) 143 (collecting cases at page 145); Attorney General v. Metropolitan, 125 Mass. 515, 28 Am. 264; Robbins v. Springfield, 165 Mass. 30, 42 N. E. 334; Benjamin v. Holyoke, 160 Mass. 3, 35 N. E. 95, 39 Am. St. 446; Hall v. Odgen, 13 Utah, 243, 258, 44 Pac. 1046, 57 Am. St. 726; Newark v. Block, 55 N. J. L. 605, 27 Atl. 1067, 22 L. R. A. 374; Citizens' v. Camden, 33 N. J. Eq. 267, 36 Am. 542; Lawler v. Hartford, 72 Conn. 74, 43 Atl. 54; Clark v. Bennett, 123 Cal. 275, 55 Pac. 908; Spiking v. Consolidated, 33 Utah, 313, 93 Pac. 841; Pilmer v. Boise, 14 Idaho, 327, 94 Pac. 432, 15 L. R. A. (N. S.) 254; United Railways v. Watkins, 102 Md. 264, 62 Atl. 234, 2 Current Law, 1762, 4 Am. & Eng. An. Cas., 449, note.

Every traveler has an equal right on public streets to every part thereof with any other traveler, including street railways. The railway company can obtain a superior right only by condemnation. It has no priority of way. Id. And see Laufer v. Bridgeport, 68 Conn. 475, 37 Atl. 379, 37 L. R. A. 537. Even in New York (see post) it has been held that as to persons who have occasion to cross the highway the rights of the street car are precisely the same in kind as the right of other persons or vehicles. Dunican v. Union, 39 App. Div. 497–500, 57 N. Y. Supp. 326; Sesselmann v. Metropolitan, 65 App. Div. 484, 72 N. Y. Supp. 1010; O'Neil v. Dry Dock, 129 N. Y. 125, 29 N. E. 84, 26 Am. St. 512. This is certainly the rule in this state. Shea v. St. Paul City Ry. Co., 50 Minn. 395, 399, 52 N. W. 902; Holmgren v. Twin City R. T. Co., 61 Minn. 85, 63 N. W. 270; Watson v. Minneapolis Street Ry. Co., 53 Minn. 551, 55 N. W. 742; Kennedy

v. St. Paul City Ry. Co., 59 Minn. 45, 60 N. W. 810; Smith v. Minneapolis Street Ry. Co., 95 Minn. 254, 104 N. W. 16.

The mutual rights of travelers and street cars to use public streets impose the duty on both to exercise mutual care. The rights and duties of both are reciprocal. Shea v. St. Paul City Ry. Co., supra; Pilmer v. Boise, supra. Both are required to exercise care. Neither is bound to anticipate negligence on the part of the other. On the one hand, the motorman ordinarily is justified in assuming that a person using the highway will exercise ordinary care for his own protection (8 Current Law, 2023, note 32), and that no one will attempt to cross the tracks so close.in front of a moving car as to render a collision probable. See, for example, Baly v. St. Paul City Ry. Co., 90 Minn. 39, 42, 95 N. W. 757; Bresee v. Los Angeles, 149 Cal. 131, 85 Pac. 152, 5 L. R. A. (N. S.) 1059.

The general rule is none the less certain that at a street crossing, or at a place used as a street crossing, the motorman in charge of a car approaching one discharging passengers is bound to keep a sharp lookout for passengers or other persons who may attempt to cross the tracks behind the standing or moving car, to have his car under such control that he can stop it upon the appearance of danger, and to give such signals as will usually protect travelers who are in the exercise of ordinary prudence. Louisville v. Hudgins, 124 Ky. 79, 98 S. W. 275, 7 L. R. A. (N. S.) 152. And see Chicago v. Robinson, 127 Ill. 9, 18 N. E. 772, 4 L. R. A. (N. S.) 126, 11 Am. St. 87; Cincinnati St. Ry. Co. v. Whitcomb, 66 Fed. 915, 14 C. C. A. 183; Birmingham v. City, 119 Ala. 615, 24 South. 558, 72 Am. St. 955. The more specific rule, as was said in Capital v. Lusby, 12 App. Cas. (D. C.) 295, 301, is that, "when a train has stopped to let off or ·take on passengers, a train on the reverse course should never be allowed to pass the stopping train, except it be on such caution and noticeable signals as are reasonably calculated to·avoid the possibility of injury to passengers. Every passenger is entitled to full protection against injury as far as human agency employed in the management of the cars can afford it, and especially is this care required while the passenger is getting on or making exit from the train. The passenger is entitled to this protective care of the railroad company until he or she is entirely free of danger from the movement of the cars on the tracks either way, as-

suming, of course, that the passenger is using reasonable care for his
or her own safety and protection. However desirable rapid transit may
be, it can only be lawfully accomplished in subordination to the strict
observance of proper and safe rules and regulations for the security
of life and limb of the public." The rule in this state accords. In
Watson v. Minneapolis Street Ry. Co., 53 Minn. 551, 55 N. W. 742,
Gilfillan, C. J., said: "At a street car crossing as high a degree of care
is required of those in charge of an electric car as [of other persons
using the highway.]" And see Gray v. St. Paul City Ry. Co., 87 Minn.
280, 91 N. W. 1106; Peterson v. Minneapolis Street Ry. Co., 90 Minn.
52, 55, 95 N. W. 751.

On the other hand, a traveler on a street has a right to rely on the
exercise of prudence conforming to the standard of law by the motor-
man, and is not bound to anticipate negligence on his part. O'Brien v.
St. Paul City Ry. Co., 98 Minn. 205, 108 N. W. 805; 10 Current Law,
1746. Thus, where he has alighted from a car, and is passing behind
it, and undertakes to cross another track, "he no doubt had a right to
expect that any car which might be upon the other track would not
run at a dangerous rate of speed and would be lawfully managed."
(Creamer v. West End, 156 Mass. 320, 31 N. E. 391, 16 L. R. A. 490,
32 Am. St. 456), and that it would be under such control as would
enable it to protect the rights of others, and that it would give the usu-
al warning of its approach (Scott v. San Bernardino, 152 Cal. 604, 93
Pac. 679; Spiking v. Consolidated, 33 Utah, 313, 93 Pac. 841; Binns
v. Brooklyn, 89 App. Div. 359, 361, 85 N. Y. Supp. 874; Evansville
v. Gentry, 147 Ind. 408, 44 N. E. 311, 37 L. R. A. 378, 62 Am. St.
421; Smith v. Minneapolis Street Ry. Co., 95 Minn. 254, 257, 104 N.
W. 16; White v. Wilmington [Del. Super.] 63 Atl. 931). "There is
no priority of right, so that the right of neither is exclusive. * * *
Life and limb are of more consequence than quick transit. * * *
The opposite doctrine appears to have found lodgment in many minds,
and there seems to be a disposition to assume that a foot passenger
has no right upon a public street as against a street car. Indeed, com-
mon observation seems to show that this belief controls the conduct
of drivers of many conveyances, public and private. Too often there is
a reckless disregard of human life and limb, and pedestrians are com-
pelled, at their peril, to keep out of the way. As a matter of law, it is

as much the duty of the vehicle to keep out of the way of the footman, and especially so at crossings, as it is for the latter to escape being run over, giving due consideration to the great difficulty of guiding and arresting the progress of a vehicle." Spear, J., in Cincinnati v. Snell, 54 Oh. St. 197, 43 N. E. 207, 209, 32 L. R. A. 276.

The traveler himself, however, owes the duty to exercise due care in protecting himself and in avoiding harm. Exactly what constitutes such care is the subject of some difference in opinion. In some jurisdictions that care is held to be practically the same as the caution required of travelers about to cross the tracks of an ordinary freight and passenger railroad upon a rural highway; that is, he must at his peril "stop, look and listen." For example, see Hoelzel v. Crescent, 49 La. An. 1302, 22 South. 330, 38 L. R. A. 708; Hornstein v. United, 195 Mo. 440, 92 S. W. 884, collecting cases at 887, 4 L. R. A. (N. S.) 729, 113 Am. St. 693. This is the rule in Pennsylvania. Berger v. Philadelphia R. T. Co. (C. C.) 141 Fed. 1020.

That this position is not tenable clearly appears from what has been previously said as to the primary distinction between the mutual rights and duties recognized by law as existing between users of the highway and of a street car company. Moreover, not only are the incident perils different, but, while to stop at a country crossing is not only prudent, but safe, to stop on the streets of a city is often as dangerous as to proceed. The pedestrian's duty is to be considered in connection with his justified presumption that the street car company, having no priority of way, will be careful especially at a crossing. Accordingly, the general rule is that the same care or watchfulness is not required in crossing a street car track as in crossing a railway track. Lynam v. Union, 114 Mass. 88, per Gray, J.; Robbins v. Springfield, 165 Mass. 30, 42 N. E. 334; Hall v. West End, 168 Mass. 461, 47 N. E. 124; White v. Worcester, 167 Mass. 43, 44 N. E. 1052; Marden v. Portsmouth, 100 Me. 41, 60 Atl. 530, 69 L. R. A. 300, 109 Am. St. 476 (a leading case); Newark v. Block, 55 N. J. L. 614, 27 Atl. 1067, 22 L. R. A. 374; Consolidated v. Scott, 58 N. J. L. 682, 34 Atl. 1094, 33 L. R. A. 122, 55 Am. St. 620; Richmond v. Garthright, 92 Va. 627, 24 S. E. 267, 32 L. R. A. 220, 53 Am. St. 839; Richmond v. Gordon, 102 Va. 498, 46 S. E. 772; Chauvin v. Detroit, 135 Mich. 85, 97 N. W. 160; Pilmer v. Boise, supra; Spiking v. Consolidated,

supra; Perjue v. Citizens, 131 Iowa, 710, 109 N. W. 280; Kramm v. Stockton, 3 Cal. App. 606, 86 Pac. 738, 903; Niemyer v. Washington, 45 Wash. 170, 88 Pac. 103; Saylor v. Union, 40 Ind. App. 381, 81 N. E. 94.

More specifically, persons crossing street railway tracks in a city are [not] obliged to stop, as well as look and listen, before crossing such tracks, unless there is some circumstance which would make that ordinarily prudent. Taft, J., in Cincinnati St. Ry. Co. v. Whitcomb, 66 Fed. 915, 14 C. C. A. 183; Evansville v. Gentry, 147 Ind. 408, 44 N. E. 311, 37 L. R. A. 378, 62 Am. St. 421. Failure to look and listen may constitute contributory negligence as a matter of law. Hooks v. Huntsville, 147 Ala. 700, 41 South. 273; Blackwell v. Old Colony, 193 Mass. 222, 79 N. E. 335; Price v. Rhode Island (R. I.) 66 Atl. 200; Phillips v. Washington, 104 Md. 455, 65 Atl. 422.

The rule as to the requirement of looking and listening is not a "hard and fast one" (Mitchell, J., in Holmgren v. Twin City R. T. Co., 61 Minn. 85, 87, 63 N. W. 270; Shea v. St. Paul City Ry. Co., 50 Minn. 395, 52 N. W. 902); nor does "it apply with the same force" as at a railroad crossing (Lovely, J., in Metz v. St. Paul City Ry. Co., 88 Minn. 48, 92 N. W. 502. And see Shea v. St. Paul City Ry. Co., supra; Smith v. Minneapolis Street Ry. Co., 95 Minn. 254, 259, 104 N. W. 16, and cases there collected) nor "in its strict sense" (Capital v. Lusby, 12 App. Cas. [D. C.] 295). And it has been held that mere "failure to look and listen does not per se constitute negligence." Spear, J., in Marden v. Portsmouth, 100 Me. 41, 60 Atl. 530, 69 L. R. A. 300, 303, 109 Am. St. 476. In Pilmer v. Boise, supra, Sullivan, J., quotes from Richmond, J., in Richmond, P. & P. Co. v. Gordon, 102 Va. 498, 46 S. E. 772, and approves the following instructions as a correct statement of the law: "While, generally speaking, one who is about to cross a street railway should both look and listen for cars, this is not an inflexible rule; nor is it to be enforced with any such strictness as in the case of an ordinary steam railway. It is not negligence as a matter of law to omit to do so. The question is whether men of ordinary prudence, exercising ordinary care and prudence, would have thought it unnecessary to do so." And see Evansville v. Gentry, 147 Ind. 408, 411, 412, 44 N. E. 311, 37 L. R. A. 378, 62 Am. St. 421. Indeed, mere failure to look, it has been held, does not necessarily prevent recovery. Benjamin v. Holyoke, 160 Mass. 4, 35 N. E. 95, 39 Am. St. 446.

In the nature of things, when failure to look and listen constitutes negligence must depend on the peculiar circumstances of each case. As Brown, J., said in Russell v. Minneapolis St. Ry. Co., 83 Minn. 304, 307, 86 N. W. 347: "Failure to look and listen might be conclusive, or at least very strong, evidence of negligence in one case, and in another of no particular controlling force at all. The ultimate determination of the question must depend largely in each case on the circumstances." And see Start, C. J., in Curran v. St. Paul City Ry. Co., 100 Minn. 58, 110 N. W. 259, and O'Brien v. St. Paul City Ry. Co., 98 Minn. 205, 108 N. W. 805. In this state there is no presumption that the traveler was guilty of contributory negligence. The burden is on the defendant to prove it. Holmgren v. Twin City R. T. Co., supra; Cf. Evansville v. Gentry, supra; Cf. New York rule, post. Whether defendant has borne the burden is ordinarily a question for the jury. Terien v. St. Paul City Ry. Co., 70 Minn. 532, 73 N. W. 412; Scott v. San Bernardino, 152 Cal. 604, 93 Pac. 679; Clark v. Bennett, 123 Cal. 275, 55 Pac. 908.

The authorities which involve circumstances similar to those in the instant case accord with and require the confirmation of the order of the trial court refusing to hold that plaintiff was as a matter of law guilty of contributory negligence. It will conduce to convenience in this case, first, to distinguish allied, but different, cases, and, second, to consider the most nearly specific cases.

First. The only decisions which are properly in the same group with the case at bar are those in which the traveler has approached the place of danger to a point where his view is obstructed, and where circumstances imposed on the car company the duty of anticipating the presence of passengers and of controlling the car and giving warning accordingly. For, while passengers have a right to cross in front of a standing car (Kennedy v. St. Paul City Ry. Co., 59 Minn. 49, 60 N. W. 810), and while one is not guilty of contributory negligence in walking in a street car track laid in a public highway in the exercise of due care and caution (Goff v. St. Louis, 199 Mo. 694, 98 S. W. 49, 9 L. R. A. [N. S.] 245; and note Indianapolis v. Kidd, 167 Ind. 402, 79 N. E. 347, 7 L. R. A. [N. S.] 143, 8 Current Law, 2022, note 29), the user of the highway knows that the motorman has a right to rely

upon his observation of the dictates of prudence, and is not bound to anticipate an attempt to cross in front of the car.

Cases in which a pedestrian, starting from the curb or like place where the approach of the car or cars can be seen, has walked in front of the car and has been held guilty of contributory negligence, are not in point. Terien v. St. Paul City Ry. Co., supra; Metz v. St. Paul City Ry. Co., supra; O'Brien v. St. Paul City Ry. Co., supra; Pittsburg Ry. Co. v. Cluff, 149 Fed. 732, 79 C. C. A. 438.

Ames v. Waterloo, 120 Iowa, 640, 645, 95 N. W. 161, to which defendant refers us, is not apt. Plaintiff there stepped from behind, not a street car, which had stopped to allow passengers to alight, but from behind a covered wagon under circumstances in which the court expressly pointed out he was "in no way distracted nor interfered with by surrounding circumstances or conditions either in seeing the car or avoiding it." And see Hafner v. St. Louis, 197 Mo. 196, 94 S. W. 291; Hageman v. North Jersey, 74 N. J. L. 279, 65 Atl. 834. So, in the case of a person attempting to cross a street at a point where his view was obstructed, not by a car which had stopped for passengers, but by a car which was passing in ordinary transit, the situation was correspondingly different from that in the instant case. See Thompson v. Buffalo, 145 N. Y. 196, 39 N. E. 709, in which a child of fourteen, attempting to cross a street in the middle of a block, ran behind a passing car without looking to see if a car was approaching on another track, and was held negligent as a matter of law. Cf. Downs v. St. Paul City Ry. Co., 75 Minn. 41, 77 N. W. 408.

Of the authorities which are properly in the class to which the instant case belongs, none to which our attention has been called, or which our somewhat extended search has revealed, require or justify holding the plaintiff guilty of contributory negligence as a matter of law. Some of them are differentiated by the presence of features wholly wanting here and by the absence of the distinctive facts appearing in this record. Thus in Creamer v. West End, 156 Mass. 320, 324, 31 N. E. 391, 16 L. R. A. 490, 32 Am. St. 456, the approaching car was open, well lighted, and filled with a crowd of shouting and singing passengers, and warning was shouted to plaintiff, who had alighted from the departing car. Other cases, also, as Morice v. Milwaukee,

129 Wis. 529, 109 N. W. 567, involving the presence of a headlight in operation, are not in point; for this accident happened in the day time.

In many of such authorities the distinction rests on differences, not only in circumstances, but also in the rules of law in the jurisdictions in which they were rendered. Defendant has referred us to a number of New York cases. As will presently be pointed out, even in that state, under the present circumstances, this case would have gone to the jury; but it is to be borne in mind that under some later decisions of the courts of that state the law is that "street railway cars between crossings have a preference." The pedestrian must stop, look, and listen, satisfy himself that the way is clear, and exercise essentially the same care with respect to a street car track as with respect to a railroad track. See Thompson v. Buffalo, supra, in which many cases are referred to; Doyle v. Albany (Sup.) 39 N. Y. Supp. 440; McGreevy v. New York (Sup.) 98 N. Y. Supp. 1024, in which it is to be noted that Houghton, J., did not think that the alighting passenger was guilty of contributory negligence as a matter of law. This case was decided after Reed v. Metropolitan, 180 N. Y. 315, 73 N. E. 41. In Axelrod v. New York (Sup.) 95 N. Y. Supp. 1072, under circumstances similar in general to those at bar, but without its destructive features, the deceased was held guilty of contributory negligence; but it was also held "that plaintiff has the burden of proving freedom from contributory negligence." However, for example, in Moebus v. Herrmann, 108 N. Y. 349, 354, 15 N. E. 415, 2 Am. St. 440, involving similar facts to those at bar, except that injury was inflicted by an ordinary carriage, the court said the duty imposed upon the wayfarer in crossing the street between the tracks of a railroad to look both ways does not as a matter of law attach to such persons when about to cross from one side of the street to the other in a city street. The degree of caution which he must exercise would be affected by the situation and the surrounding circumstances. And there are many other New York cases inconsistent with these defendant has selected. See ante.

The difference both in law and in circumstance appears also in Gray v. Fort, 198 Pa. St. 184, 47 Atl. 945, to which defendant refers us. There, after alighting, the plaintiff started towards the other track without stopping, or looking, or listening, and was immediately

107 M.—22

struck by a car on that track. He was warned of his danger by the motorman of the car following the car from which he had alighted, and could have saved himself if he had heeded the warning. The court said: "When Mr. Gray alighted from the car onto the street he was in a place of safety, and it was his duty to remain there or to go to the sidewalk, and wait until the road was clear, or until he could see that it was clear." It has previously been shown that the relevant principles of law generally recognized and in force in this state are at right angles with the bases of the decisions. See Indianapolis v. Tenner, 32 Ind. App. 311, 67 N. E. 1045. But see elaborate dissenting opinion by Roby, J., 32 Ind. App. 318, 67 N. E. 1047, and Hornstein v. United, 195 Mo. 440, 92 S. W. 884, 4 L. R. A. (N. S.) 729, 113 Am. St. 693, in which the alighting passenger was held guilty of contributory negligence because "the plaintiff did not stop for a moment, that he might have unobstructed view of the track and see whether or not it was safe to proceed across the street."

Second. Even of the most nearly specific cases, none involve identical facts. Some of them have, however, determined that certain features of this case alone were sufficient to require the submission of the question of contributory negligence to the jury. Thus contradictory testimony as to the way usual signals or warnings were given has been held sufficient to raise the issue of fact. Dobert v. Troy City (Sup.) 36 N. Y. Supp. 105 (as to a plaintiff who had alighted from another car); Chicago v. Loomis, 201 Ill. 118, 66 N. E. 348 (as to passenger at crossing). In Stevens v. Union, 75 App. Div. 602, 78 N. Y. Supp. 624, affirmed 176 N. Y. 607, 68 N. E. 1125, the motorman failed to slacken speed and to give warning as he approached and passed a car on another track going in an opposite direction. The car struck the passenger, who had alighted from another car, and carried him forty or forty five feet beyond the place of collision. This was sufficient to make the question of negligence and contributory negligence for the jury. And see Binns v. Brooklyn, 89 App. Div. 359, 85 N. Y. Supp. 874. In the instant case the passenger was carried one hundred feet. In Pelletreau v. Metropolitan, 74 App. Div. 192, 77 N. Y. Supp. 386, affirmed 174 N. Y. 503, 66 N. E. 1113, a passenger who had alighted and passed behind a north-bound car, and who was approaching a southerly track, was injured by a passing

car. A companion had preceded plaintiff and crossed successfully. The court said: "The space between the north-bound car and the west track was slight and plaintiff's vision in the northerly direction was obscured by the car behind which she passed, and, as she heard no gong sounded or other warning of an approaching car, we cannot say that she was guilty of contributory negligence because she may have erred in thinking she could follow her companion in safety." The most nearly analogous case in this jurisdiction is Peterson v. Minneapolis St. Ry. Co., 90 Minn. 52, 95 N. W. 751. There the attention of the alighting passenger, seventy years of age, was distracted by the circumstance that another car was approaching on the same track and a boy on a bicycle was racing with it. Here contributory negligence was held to be for the jury. The principles there applied would determine this case as did the trial court.

Defendant refers us to Downs v. St. Paul City Ry. Co., 75 Minn. 41, 77 N. W. 408, where a boy familiar with the situation passed in front of a car barn and was injured by a car issuing from it. The court said: Plaintiff "was bound to exercise ordinary care. It may be conceded that he was not, as a matter of law, bound to stop and look through the doorway before crossing the tracks; but it was negligence for him to heedlessly trot along in front of the opening and only two feet therefrom, without doing anything to ascertain whether a car was coming out, knowing that one might come out at any moment." The rule deducible from the cases most nearly in point is that: Where the evidence of the plaintiff shows actionable negligence on the part of the company, and the question of contributory negligence of the plaintiff depends upon a variety of circumstances, from which different minds may reasonably arrive at different conclusions as to whether there was contributory negligence or not, the question should be submitted to the jury under proper instructions; and it is error in such case for the court to direct a verdict for the defendant.

In the light of these general principles and of these special authorities, the conclusion of the learned trial judge that plaintiff was not guilty of contributory negligence as a matter of law must be confirmed. It will be assumed that her rights and duties were determined by the rule laid down in Creamer v. West End, 156 Mass. 320, 322, 31 N. E. 391, 16 L. R. A. 490, 32 Am. St. 456, as follows: "One who steps

from a street railway car to the street is not upon the premises of the railway company, but upon a public place where he has the same rights with every occupier, and over which the company has no control. His rights are those of a traveler upon the highway, and not of a passenger." But plaintiff was not a trespasser, nor was she undertaking to cross a railway track. The rights of plaintiff and defendant to use the street were mutual, and their duties to take care reciprocal. The place at which she was injured was in the settled portion of the city, where there was considerable travel, and was governed by rules applicable to urban traffic. It was not at the intersection of streets, but had been and in this case was recognized by defendant essentially as a stopping place for passengers and as a crossing. When plaintiff alighted and passed behind the car she had left, she was bound to exercise commensurate care in the highest sense to avoid injury. Her view was obstructed by the projecting back of a retreating car. She was not as a matter of law negligent under the circumstances of this case because she did not stop or step back or return to the sidewalk until the retreating car had gone far enough to enable her to see whether a car was approaching on the other track. She had the right to rely on the exercise of due care on the part of the motorman of such car in giving usual signals, in having his car under reasonable control, and in going at a slow speed. She was not required to reason that he might be negligent and to govern herself accordingly. She heard no bell. She saw another passenger who had left the car in which she had come pass behind it as she was doing. As she followed him, she saw him cross the southerly track. This the jury might have found was a natural assurance of safety.

The significance of the gesture of her fellow passenger, exactly what it was, when it was given, where she was at the time, whether she saw it or should have seen it, what effect it should have had under the circumstances, and what she could have done if it had been a caution, were regarded by the trial court questions for the jury. A fortiori that view must be taken here. The trial judge saw the gesture. It is merely indicated on the record before us. There was other testimony, beside that of the man ahead, favorable to plaintiff's contention. The jury might reasonably have found that, acting on the reassurance of his conduct, plaintiff had prudently undertaken to cross,

and moving slowly—she was sixty five years of age—and with due caution had acquired such an impetus which carried her beyond the very slight distance—eighteen inches—between the cars as made it impossible for her to retreat before the car coming at a dangerous rate of speed struck her. The fact that it carried her one hundred feet was, as was pointed out in the New York case, persuasive not only of the presence of defendant's negligence, but also of the absence of contributory negligence on her part.

It follows that the order of the trial court in refusing to grant defendant's motion must be affirmed.

Affirmed.