MARSHALL, J.
— This is an action for $10,000 damages for personal injuries received by the plaintiff, on the 6th of June, 1901, about half past six o’clock p. m., in consequence of a collision with the defendants’ street car, at the corner of Vandeventer avenue and Page avenue, in the city of St. Louis. There was a verdict and judgment for the plaintiff for $6,000, from which the defendants appealed.
*443 THE ISSUES.
The petition alleges, that, at the time of the accident, the defendants ’ cars were provided with a bell or gong, “which it was customary and nsnal for said motorman to ring, for the purpose of warning persons of the approach of said car, whenever said motorman had reason to anticipate the sndden appearance of persons upon or near the track, on which the car was running, ’ ’ and were further provided with a brake for stopping the car, or checking the speed thereof; that on the day named, the plaintiff was a passenger on one of defendants’ cars, going south on Yandeventer avenue, and that when the car reached the south side of Page avenue, it was stopped for the purpose of permitting passengers to alight from said car; that plaintiff alighted from said car, and was proceeding in the rear thereof, along the south side of Page avenue, going from the west track of defendants’ railway to the pavement on the east side of Yandeventer avenue; that as he approached the east track of defendant’s railroad, upon said Yandeventer avenue, and was about to cross the same, a north-bound car, in charge of defendant’s servants, as aforesaid, carelessly and negligently ran into plaintiff and knocked him down, and injured him in a painful manner; that the injuries were caused “by the carelessness and negligence •of defendant’s servants in operating its cars in the following respects, to-wit: that immediately prior to the happening of the said injury, and while said south-bound car was discharging its passengers upon the street on the south side of Page avenue, defendants’ servants in charge of said car carelessly and negligently failed to give the plaintiff, as he was alighting from said car, and was about to cross defendants’ eastwardly track, any warning of the- fact that said north-bound car was approaching and was near to the .south side of Page avenue; that while said south-bound *444 car was so discharging its passengers as aforesaid, including the plaintiff, said north-bound car was negligently permitted to run at a high and dangerous rate of speed, as it approached and passed the corner of Page avenue; that notwithstanding the fact that his view of the south crossing at Page and Vandeventer avenues was obstructed by defendants’ south-hound car, and he had reason to anticipate the sudden appearance of persons desirous of crossing the eastward track of said road, at said point, the motorman of said northbound car negligently and carelessly failed to ring his gong, or to give any warning whatever of the approach of said north-bound car to Page avenue, and negligently and carelessly failed to check the speed of his said car, or to have said car under control; and that the said motorman negligently failed to keep watch for persons approaching said eastward track, or to stop said car as soon as he could have done after he saw, or by the exercise of ordinary care could have seen, plaintiff in a position of danger. Plaintiff further states that but for the carelessness and negligence of the defendants’ servants in operating its said cars, as aforesaid, the injuries herein complained of would never have happened. ’ ’
The answer is a general denial, coupled with a plea of contributory negligence, in that, the plaintiff stepped upon or near the railway track while the car of the defendants was in close proximity to him, and, in that, the plaintiff failed to look or listen or heed the approach of the ear. The reply is a general denial.
The case made is this:
Vandeventer avenue runs north and south. Page avenue runs east and west. The defendants have a double street-car track on Vandeventer avenue. The south-hound cars run on the west track, and the northbound cars run on the east track. The space between the said two tracks is four feet eight inches, according to the plaintiff’s statement, or five feet, according to *445 the defendants ’ statement. The space between the passing cars is ten inches, according to the plaintiff’s statement, and one foot according to the defendants’ statement. The plaintiff lived on the south side of Page avenue, and east of Vandeventer. He worked down town. On the day of the accident, as was his custom, he took the car to go home, which would take him.west to Vandeventer avenue, and thence south to Page avenue. When the car reached the south crossing of Page avenue on Vandeventer avenue, a passenger alighted therefrom before the car stopped, and crossed Vandeventer towards the east. When the-car stopped, the plaintiff alighted, and immediately passed around the rear of the south-bound car, for the purpose of crossing Vandeventer avenue towards the east, in order to reach his home.
The testimony for the plaintiff tends to prove that as he passed along the rear of the south-bound car, he listened for the bell, to see if a north-bound car was approaching, and heard no bell, and that no bell was sounded; that his view to the south was obstructed by the south-bound car from which he had alighted, so that he could not see whether a north-bound car was approaching; that as he passed to the east side of the south-bound car, he stooped to look toward the south for a north-bound car, and that, at that time, he was ‘ ‘ a little over the west track, one foot over the west track, I guess, with my left foot I went over a little. . . ; Q1. Had you gotten as far as the north-bound track when you saw the car? A. Yes, sir. • Q. You just now told me that you had gotten to the corner of that car. A. Yes, sir. Q. The corner nearest to your house ? A. Yes, sir. Q. The corner is between the east track and the west track isn’t it? A. Yes, sir. Q. Had you got as far as the east track, the car track that goes north — had you gotten that far? A. Pretty near it, near that. Q. Then you had not gotten that far; you say you had gotten or had stepped beyond *446 the west track with your left foot? A. Yes, sir; the west track with my left foot, yes; that is right. Q. Do you remember how you turned back? A. I can remember that when I saw the car coming I turned right back with my body, at the same time the car struck me on my right shoulder, the car running north, the car on the east track, and 1 fell down and I fell unconscious. ’ ’
For the plaintiff Miss Caroline Zwalhas, a music teacher, testified that she lived in a flat, upstairs, on the south side of Page avenue, three doors east of Vandeventer avenue;'that “I was looking out of my window and I saw Mr. Hornstein coming towards his house, and just as he was about to cross the east track, he turned his head to the south, and then I heard someone halloo, ‘Look out;’ just that instant the car struck him. Q. Where was Mr. Hornstein when you first saw him? A. He was right behind the south-bound car. Q. In what track, or whereabout in the street? A. On the west track. Q. You saw him coming east towards his home? A; Yes, sir. Q. On what side of Page avenue? A. On the south side. Q. He was coming on the south side, and when you saw him he was there? A. He was on the track, on the west track, the first time I saw him, and then he was coming towards the east track, he stooped and looked around to the south. Q. Will you show the jury exactly how he stooped? A. Well, he was walking this way (indicating) as if looking behind something, just as a person would when looking behind something that was there. Q. Where was he, do you say, when he stooped as if looking behind something? A. Well, on the track. Q. How is that ? A, On the track, on the west track, or a little beyond, a little more to the east. Q. A little beyond the west track? A. Yes, sir; on the east side. Q. Which direction did he look? A. To the south. Q. With reference to that action on his part, when was he struck? A. Just as I saw him do that movement *447 somebody hallooed out, ‘Look out,’ and then he was struck just the same time, those three things went all together, I could not say it as quick as it was done. ’ ’
Conrad Cohnheim, the passenger who alighted ahead of the plaintiff, testified for the defendants, and said that he got off of the ear before it stopped, and had crossed the track going eastwardly. He then testified as follows: “ Q. At the time you got off, did you see Mr. Hornstein? A. I did not. Q. When did you first see him? A. I first seen him when I crossed the tracks, and he was coming around the car, the rear end of the car. Q. Which end was he coming in? A. He was coming east. Q. What direction was he facing? A. He was facing slightly northeast. Q. When you saw him state whether he was standing still or moving? A. He was moving when I first saw him. Q. Did you see this north-bound car coming? A. Yes, sir, I did. Q. What, if anything, did you say to Mr. Hornstein at that time? A. When I got across the street, at the east crossing of Yandeventer and Page avenue, I turned around and I seen the car, and I hallooed to him to stand back. Q. In what tone did you halloo? A. A very loud tone. Q. Louder than you are speaking now ? A. Yes, sir, a good deal louder. Q. He was then looking in your direction, was he? A. Yes, sir. Q. State whether or not, at any time, after he started 'towards the east track, you saw him look towards the south. A. I did not. Q. Did you see the car strike him? A. Yes', sir, I did. Q. What portion of the car struck him? A. Why, the front end of the platform; that is, the northwest corner of the dashboard. Q. Did you see the north-bound ear stop? A. Yes, sir. Q. Where was it when it stopped? A. The rear end stopped about ten feet from where it struck him. . . . Q. State whether or not, at any time, after Mr. Horn-stein started towards the east, behind the south-bound car, you saw him stop before he was hit. A. Well, I don’t know as he did stop, he simply was walking *448 along and seemed to look more towards the north. Q. And was in that position. A. And was in that position when he was struck. ’ ’
The testimony of Miss Zwalhas was that the bell on the north-bound car was not rung.
Mrs. Fleming, a witness for the plaintiff, who was more than one hundred feet west of Yandeventer avenue, testified that she heard the car, from its noise, coming north, half a block away from the crossing. The testimony of the defendants’ witness, Cohnheim, was that he did not remember hearing any gong sounded, on the north-bound car. It is conceded in the briefs that the car was running at a speed of seven miles an hour, and that the grade on Yandeventer avenue, at the point of collision, was a slight up-grade towards the north. Over the objection and exception of the defendants, the plaintiff read in evidence a rule of the defendants as follows: “When passing a car that is discharging passengers, or when at or near the crossings, the gong should be sounded once when within one hundred feet of each other, and once when half way past. The current must be turned off, and the car slowed up so that it could be stopped instantly in case any person should attempt to cross the track in front of the moving car. The gong must also be sounded one hundred and fifty feet before the crossing at all streets both day and night. ’ ’
At the close of the plaintiff’s case, and again at the close of the whole case, the defendants demurred to the evidence, the court overruled the demurrers and the defendants excepted, and now assign that ruling as the chief error relied on.
I.
The first error assigned is the refusal of the trial court to give the instruction asked for a nonsuit. The ease was formerly tried and resulted in a verdict for the plaintiff for $1,000. The defendants appealed to the St. Louis Court of Appeals, where the *449 judgment was reversed and the cause remanded. The majority of the court (Judges Barclay and Goode) voted in favor of a reversal, because of the failure of the trial court to give an instruction in reference to joint, mutual and concurring negligence. Bland, P. J., wrote the opinion, and held that the demurrer to the evidence should have been sustained. Thus making the court unanimous in favor of a reversal, the two named being in favor of remanding, while the one was in favor of reversing without remanding. The case is reported in 97 Mo. App. 271. The opinion of Bland, P. J., upon the question now being considered is so terse, lucid and convincing, that it is a pleasure to reproduce it here. It is as follows:
“Defendant insists that its demurrer to plaintiff’s evidence should have been given. In the circumstances^ of the ease negligence of defendant is not to be inferred from the mere happening of the injury; [Murphy v. Railroad, 115 Mo. 111; Yarnell v. Railroad, 113 Mo. 570; Harper v. Standard Oil Co., 78 Mo. App. 338; Breen v. St. Louis Cooperage Co., 50 Mo. App. 202.]
“There is no evidence in support of the first, second and fourth allegations of negligence in the petition: In respect to the third allegation of negligence, the failure to give the warning signal, it is unquestionably the law that the duty of the motorman in charge of the car running north was to have sounded the gong on approaching the crossing. The omission of this duty was negligence. [Dixon v. Railroad, 109 Mo. 413; Weller v. Railroad, 164 Mo. l. c. 195.]
“While there is no direct proof that the signal was not given, there is negative evidence of the fact, and it was within the power of the defendant to have proven affirmatively by the motorman in charge of the car, if it was a fact, that the warning was given. Defendant failed to produce the motorman as a witness or to account for his absence. The negative evidence of *450 the failure to give the warning signal and the failure of defendant to prove affirmatively that it was sounded, if such was the fact, was sufficient proof of the third allegation of negligence to send that issue to the jury, and there was no error in refusing defendant’s peremptory instruction, unless the evidence is all one way that plaintiff was guilty of such contributory negligence as to preclude his right of recovery, notwithstanding the defendant was guilty of negligence in failing to give the warning signal.
“The plaintiff testified that he looked for the north-bound car as he was moving out of his car, but he saw none; that he looked and listened when he got off, but that he neither saw nor heard the approaching car. He could not see on account of the obstruction caused by the car he had just left; looking, under the circumstances, was a useless performance. The car from which he had alighted, he testified, began to move away when he was in the middle of the west track. Had he then halted but for one moment, the car that was obstructing his vision would have moved away and he could have seen the north-bound car, but he did not take this precaution. He moved on towards the east track without halting or hesitating and arrived sufficiently near that track just in time to come in contact with the corner of the vestibule of the car. This was negligence of the most pronounced sort. It was plaintiff’s duty, in the circumstances, to have stopped and waited until he could see whether or not there was an approaching ear on the east track before blindly proceeding to cross over that track. [Weller v. Railroad, 164 Mo. l. c. 198; Dlauhi v. Railroad, 139 Mo. 291; Kelsay v. Railroad, 129 Mo. 362; Childs v. Bank of Missouri, 17 Mo. 214; Easley v. Railroad, 113 Mo. 236; Culbertson v. Railroad, 140 Mo. 35; Pinney v. Railroad, 71 Mo. App. 577; Lien v. Railroad, 79 Mo. App. 475.]
‘ ‘ Common prudence would have dictated, when the south-bound car began to move away, that the plaintiff *451 stop for a moment that he might have an unobstructed view of the east track and see whether or not it was safe to proceed across the street. His failure to exercise this precaution was negligence, and there is no escape from the conclusion that this act of negligence contributed to and was the proximate cause of his injury: where this is the case, the law is well settled that no recovery can be had. [Weber v. Railroad, 100 Mo. 194; Hogan v. Railroad, 150 Mo. 36; Moore v. Railroad, 146 Mo. l. c. 580; Corcoran v. Railroad, 105 Mo. l. c. 405, and cases cited; Tesch v. Railroad, 53 L. R. A. 618.] ”
There is substantially no difference in the facts as they appeared when this case was before the Court of Appeals, and the facts as they appear in this record. Counsel for plaintiff claim that the evidence here is different from the evidence there, in this, that at the former trial there was no evidence as to the exact speed of the north-bound car as it passed Page avenue; whereas, at the second trial defendants’ witnesses admit a speed of seven miles an hour; also that at the former trial there was only negative evidence that the bell was not sounded, whereas, here there is positive evidence that the bell was not sounded. ■ These considerations, however, do not make the essentials of the case here presented different from the case that was presented to the St. Louis Court of Appeals, for conceding the speed of the car to have been seven miles an hour, that was not an unlawful or dangerous rate of speed, and was not shown to have been in excess of the authorized rate of speed; and there is no material difference between the negative evidence that the gong was not sounded and positive evidence that it was not sounded, so far as the question of whether or not the plaintiff had made out a prima-facie case for the jury was concerned. The reasoning and' conclusions of Bland, P. J., above quoted, are strictly in harmony with the rules of law declared by this court in the opinion of Valliant, J., in Giardina v. Railroad, 185 Mo. 330. *452 In that case the plaintiff went to a car, going in one direction, to give his brother a key, and after he had done so, crossed in the rear of that car and was injured by a collision with the car coming in the opposite direction on the other track. The rule of the company as to the running of the cars, that was introduced in this ease, was also introduced in that case. The trial court sustained a demurrer to the evidence in that case, and the plaintiff appealed; and the correctness of the ruling of the trial court was the sole point decided by this court. Valliant, J., said:
‘ ‘ Plaintiff testified that he had noticed that it was a custom of the company, in the operation of its cars, to have the motorman of a car which was approaching a car that had stopped, to sound his gong and go slowly and, knowing this custom, he, before attempting to cross the north track, passed behind the east-bound car and listened, but hearing no gong, concluded that no car was coming west, stepped out and was struck.
“The tracks looking east from where the plaintiff stood were straight for 1,000 feet and the car coming west could have been seen from that distance if one had been looking.
“It may be conceded that the defendant was negligent in running its car at a high rate of speed and without sounding the gong past a standing car from the rear of which the motorman ought to have known that people were liable to pass. It is not likely that the peremptory instruction was given on the theory that no negligence of the defendant -was shown, but rather, that the plaintiff failed to observe that degree of care that was to be expected of a man of ordinary prudence, and that his negligence contributed with the negligence of the defendant to produce the injury complained of.
“Plaintiff was familiar with the location and also the movements of the cars; he had even taken such notice of the operation of the cars that he was aware *453 that it was the custom for a running car, passing one that had stopped, to be checked in its speed and its gong sounded freely. He was so confident of this custom that he seemingly on this occasion staked his life on its observance, for, after pausing to listen for the sound of the gong and hearing none, he stepped on the north track or in front of the coming car without looking and was struck. From where he stood the body of the eastbound ear shut off his view to the east, but one who was as familiar with the movements of the cars as he said he was, in fact, any man of common experience in the plaintiff’s place, should have known that in a moment the east-bound car would have gone and the obstruction to his vision have been removed. But even if he had not had that moment to spare he could have leaned forward beyond the line of the standing car in perfect safety and have seen the west-bound car coming. The measured distance between the tracks was six feet ten inches. One witness for plaintiff said that the distance between two cars passing on those tracks was about one foot, but he also said that the distance between the tracks was about four feet; he had made no measurement for either estimáte; he was short two feet and ten inches in his estimate as to the distance between the tracks. But even if the space between the passing cars' was only one foot, it was sufficient to enable the plaintiff to have looked and if he had looked he would have seen the car coming and would not have been hurt. His act in stepping on or near the north track without looking for the west-bound ear was negligence and it contributed to cause the accident. If authorities are needed to sustain this view of the law, they may be found in the cases cited in the brief for respondent, and the cases cited in the brief for appellant are not to the contrary. ’ ’
In that case it appeared that the car that struck the plaintiff was running at a high rate of speed, and without sounding the gong while passing the standing car, and thus it was shown that the defendant was *454 guilty of negligence, but a recovery by the plaintiff was denied solely on the ground that although defendant was negligent, the plaintiff was also guilty of such contributory negligence as barred his recovery. There is no substantial difference between that case and the case at bar, except in this, that here it is not shown that the car was running at a high rate of speed, but on the contrary it is conceded that the car was running only seven miles an hour, and that rate of speed is not shown to have been an unauthorized rate, nor was it negligence in itself. .
The principal contention of the plaintiff here is that there is no law which requires him to stop until the car from which he had alighted had moved away, so as to afford an unobstructed view of the north-bound car. But even if this contention be conceded to the plaintiff, nevertheless, it is and must be admitted that the common-law duty was cast upon the plaintiff to exercise ordinary care, before stepping upon the northbound track, or getting so close' thereto as that a collision with a car thereon was almost inevitable, to discover whether or not there was a car approaching on the north-bound track.
The argument of the plaintiff is that there was only a. space of four and one-half feet between the two tracks, and a space of only ten inches between the passing cars, and that the plaintiff could not, by the exercise of ordinary care, have discovered the approach of the car on the north-bound track, because there was not space enough between the passing ears for him to have looked around the rear of the south-bound car, without getting so close to the north-bound track that a collision with the car coming on that track was inevitable. And plaintiff differentiates this case from the G-iardina ease by claiming that'in the latter there was a distance of six feet ten inches as against four feet eight inches here, and a distance of one foot between the passing cars as against a distance of ten inches *455 here. The distance between the tracks is immaterial, and the difference between the distance between the tracks in the Giardina case and here was only a difference of two inches, which is too insignificant to constitute a difference between the principles of the Giardina case and of this case. But conceding that there was not space enough between the passing cars for the •plaintiff to have looked around the rear of the southbound car to see whether there was a car coming on the north-bound track, and that without so doing he could not have determined whether there was or was not a car approaching, it also follows that the motorman of the north-bound car could no more have seen the plaintiff in his position, at the rear of the south-bound car, than the plaintiff, in his position, could have seen the approach of the north-bound car.
These considerations necessarily compel the conclusion that common prudence on the part of the plaintiff demanded that he take some other precaution to discover whether or not there was a car approaching on the north-bound track, before getting so close to that track as to make a collision with the ear inevitable. The plaintiff lived in that immediate vicinity and was familiar with the conditions there existing. He traveled ■on the same road every day. He knew the frequency with which cars passed. He knew the distance between the tracks, and the distance between the passing cars, or at any rate, was chargeable with notice thereof, for he had the means constantly at hand of knowing those facts. It would have been but the loss, at most, of a second or two for the plaintiff to have paused, before getting so near to the north-bound track as to come in contact with a passing car, long enough to have permitted the car from which he had alighted to move southwardly far enough for him to see whether or not it was safe for him to attempt to cross the north-bound track. As was well said by Bland, P. J.: “ Common prudence would have dictated, when the south-bound car *456 began to move away, that the plaintiff stop for a moment that he might have an unobstructed view of the east track, and see whether or not it was safe to proceed across the street. His failure to exercise this precaution was negligence, and there is no escape from the conclusion that this act of negligence contributed to and was the proximate cause of the injury; where this is the case the law is well settled that no recovery can be had. ’ ’
The report of this ease before the St. Louis Court of Appeals shows that counsel for plaintiff then cited: Railroad v. Snell, 54 Ohio St. 197; Railroad v. Gentry (Ind.), 37 L. R. A. 378; Consolidated Traction Co. v. Scott (N. J.), 33 L. R. A. 122; Railroad v. Robinson, 127 Ill. 9; Smith v. Railroad, 18 Wash. 351. Counsel for plaintiff now also cite those same cases, and in addition thereto, the following cases: Dobert v. Railroad, 91 Hun 28; Bass v. Railroad, 100 Va. 1; and Railroad v. Whitcomb, 66 Fed. 915.
The cases then and now citéd differentiate between steam railroads and street cars, and whilst conceding that it is contributory negligence for a person to thus enter upon or near a steam railroad under circumstances like those here presented, hold that it is not contributory negligence for one so to do with reference to street cars. In fact, some of them go to the extent of holding that it is not the duty of the person to stop, look or listen before attempting to cross a street car track.
Counsel for defendant have been equally diligent, and in addition to the cases from other jurisdictions cited by them in this case when it was before the St. Louis Court of Appeals, now refer the court to the following cases: Buzby v. Traction Co., 126 Pa. St. 559; Smith v. Railroad, 29 Ore. 539; Creamer v. Railroad, 156 Mass. 320; Railroad v. Boddy, 8 Am. Neg. Rep. 555, which hold to the rule that where a person deliberately *457 walks from behind a street car, from which he has alighted, and attempts to cross a public street without using his powers of observation, and is injured by an approaching car which could have been avoided by the use of ordinary care, he cannot recover damages for such injury. In some of the eases cited by plaintiff, notably Railroad v. Whitcomb, supra, it is said that the doctrine contended for by defendant is the rule in Pennsylvania, that the courts of the other states have not adopted it, and that it is not the rule in the Federal courts. The learned judge who made that statement evidently had not had the benefit of the research of counsel that is afforded this court by the cases cited. The sum of the matter as to the state of the law in other jurisdictions may, therefore, be said to be, that in Ohio, New York, Virginia, Illinois, New Jersey, Washington' and Indiana, the rule contended for by plaintiff obtains, and likewise the distinction between steam railways and street cars also obtains, or did obtain before the adoption of rapid transit, such as now exists in all large cities. Whereas, in Pennsylvania, Maryland, Oregon and Tennessee the rule stated by the defendants obtains.
The later cases in Missouri do not recognize such a distinction between steam railroads and street railroads, with respect to the obligation of the pedestrian to look or listen for an approaching car, and if necessary stop, but the courts of this State, keeping pace with the progress of the times, recognize that there is quite as much danger to be apprehended now from stepping on the street-car tracks, where the cars are run by electricity and at a rapid rate, and with great frequency and at short intervals, as there is from stepping on the steam-railroad tracks, where the cars do not run as often. And therefore common prudence requires increased care on the part of the pedestrian in proportion to the dangers to be apprehended. In other words, the decisions in this State have kept step with the times. *458 This is the rationale of Giardina v. Railroad, supra, and the principles there announced have been followed by this court ever since.
Plaintiff, however, cites the cases of Riska v. Railroad, 180 Mo. 168, and Eckhard v. Railroad, 190 Mo. 593, as holding- a different doctrine. But an examination of those cases clearly demonstrates that the contention is untenable. In Riska v. Railroad, the conditions here presented were not shown to have existed. That was a plain casé of a person stepping onto the track, without any obstruction,. such as a car from which he had just alighted, preventing his seeing the approach of the car. There was no evidence to show whether the deceased in that case looked or listened before stepping onto the track. The car was running from fifteen to thirty' miles an hour. The authorized rate of speed was ten miles an hour. The ease went off entirely on the proposition that the ear was being operated at an unlawful and dangerous rate of speed, and the presumption that the deceased listened and saw the car, hut that he indulged the presumption, ‘ ‘ as he had á right to do, ’ ’ that the car was not running at an unlawful rate of speed, and that he could cross the track in safety. That case is easily distinguishable from the case at bar, in that, the plaintiff walked behind the rear of the car and was struck by a car coming in the opposite direction. But it was unlike the'case at bar, in that, the deceased had almost completely crossed the track, on which the car was coming that struck him — one more step would have put him in a place of safety — and the car that struck him was running at an unlawful rate of speed of from twenty to twenty-five miles an hour; and that the motorman saw the deceased when he was from thirty to fifty feet away from him; and upon the presumption that the deceased was exercising ordinary care, and that he had a right to presume that the railroad company would obey the ordinance, with reference to speed. The vigilant watch ordinance of St. Louis also figured *459 in the case. A recovery was sustained in that case on the ground of the unlawful rate of speed of the car, and the question of the contributory negligence of the deceased was held to be a proper question for the jury, because fair-minded men might reasonably differ as to whether or not it was exercising ordinary care for the deceased to attempt to cross the track, under the circumstances, upon the presumption that the car was not running at a higher rate of speed than the law authorized. Stress was also laid upon the fact that the deceased was not instantly struck upon stepping on or near the track, but that he had almost crossed the track before the collision occurred. -
That case is very different from the case at bar, and does not support the contention, here made, that a person is not obliged, when passing along the rear of one car, to stop until that car moves far enough for him to see whether it is safe to attempt to cross the other track, if it is impossible for him to see while the car from which he has alighted obstructs his view, and likewise impossible for'him to look around the end of the car from which he has alighted without getting so .close to the other track as to- be necessarily struck by an approaching car. The physical facts in this case, even under the most favorable view that can be taken of the plaintiff’s testimony, show that he got so close to 'the north-bound track, before looking to discover whether a car was approaching on that track, as that a collision with that car was inevitable, and that there was- either no necessity for him so to do, or that if there was such a necessity, it was his ■duty to wait until the car from which he had alighted had moved far enough away to the south to enable him to see whether a car was approaching on the north track, and would have only been a matter of a second, for the evidence is that the north-bound car was then only half a carlength from the place of collision.
*460 The plaintiff says that when he looked around the south-hound car he saw at once the north-bound car coming, and then “I turned back and the car struck me on my shoulder.”
Conceding that there was only a space of ten inches between the passing cars, and that the plaintiff, therefore, had only that space in which to look for the approaching car, still he could have so looked without placing himself in such close proximity to the approaching ear as to make it necessary for him to “turn back,” or as to be struck on his shoulder by the approaching car.
Upon the case made, therefore, the conclusion is inevitable and irresistible that there is no essential difference between the case at bar and the Giardina case, and the prior decisions of this court applicable to facts like those here presented.
Even conceding that the defendant was guilty of all the negligence charged, nevertheless, under the unquestioned facts in this ease, the plaintiff was guilty of contributory negligence, which bars his recovery.
The trial court, therefore, erred in overruling the demurrers to the evidence, and its judgment is reversed.
All concur.