## GOFF v. ST. LOUIS TRANSIT COMPANY, Appellant.

### Division Two, December 4, 1906.

1. **STREET RAILWAY: Trespassers.** Pedestrians have the right to walk upon any part of a public street, whether there be a street railway laid therein or not, and are not trespassers if they do so.

2. ———: ———: **Ordinary Care: Presumption.** The law presumes that a pedestrian on a railway track on a public street was in the exercise of ordinary care and caution, nothing to the contrary appearing in plaintiff's evidence, and it devolves on the defendant company to overcome that presumption.

3. ——: ——: ——: ——: : No Lights: Demurrer to Evi-
dence. The presumption being that deceased was in the exer-
cise of ordinary care in walking in the dark on defendant's rail-
way track in a public street, and there being evidence on behalf
of plaintiff tending to show that the car was insufficiently
lighted to enable a pedestrian to see, and there being no evi-
dence tending to show that any signals were given of the ap-
proach of the car, the court should submit it to the jury to de-
termine whether or not the railway company was guilty of neg-
ligence in running the car along the street of a dark night with-
out sufficient light to enable a pedestrian to see and escape
the car, although defendant's witnesses testify that the car was
brilliantly lighted. The law devolves on street railways the
duty to exercise ordinary care to avoid collision with those who
have a right to use the highway, especially at places where such
persons may reasonably be expected to be on the track, and it
is for the jury to determine whether or not defendant's wit-
nesses are to be believed.

4. ——: Presumption of Care: Intoxication: Question for Jury.
Where to rebut the presumption that deceased was in the exer-
cise of ordinary care evidence is offered that he was intoxicated
at the time he entered upon the track, an issue is raised which
the jury alone is authorized to settle.

5. ——: Man on Track: Stopping Car: Ordinary Care: Question
for Jury. Where the motorman's testimony is that he could
and did stop the car within thirty-two feet after he saw
deceased lying on the track, his head over one rail and his
feet over the other, and saw him thirty feet away, and the con-
ductor, who was on the front platform, testifies that he saw
him when the car was ten feet from him and could have seen
him seventy-five feet away, and the roadmaster testifies that
the man could have been seen forty feet away, it is for the jury
to say whether or not the motorman exercised ordinary care
to avoid striking deceased.

6. PRACTICE: Instructions. It is not error to refuse instructions,
even though correct statements of the law, when those given
fully cover the case.

Appeal from Gasconade Circuit Court.—*Hon. Wm. A.
Davidson,* Judge.

AFFIRMED.

*Boyle & Priest, J. C. Kiskaddon* and *B. L. Matthews* for appellant.

(1) The court erred in refusing to give a demurrer to the evidence asked by defendant at the close of plaintiff's case, and also in refusing to give it at the close of the whole case. Plaintiff introduced no evidence tending to show that the lights were dim or the headlight insufficient at the place of the casualty, or that the motorman was not then at his post, or that he was not then keeping a lookout ahead, or that he failed to give a warning to deceased. Nor did plaintiff introduce the slightest evidence even tending to prove that a failure to lookout ahead, or a failure to give a warning, or an insufficient headlight, or the failure of the motorman to be at his post was the proximate cause of the death of deceased. All these things are left to mere conjecture. It was possible that one of these things might have been the proximate cause of his death, but the plaintiff did not prove it. The alleged acts of negligence were too remote from the actual occurrence. There is nothing to show how deceased got on the track, what his position was on the track, or whether he was dead or living when the car struck him, if it did. On the other hand, defendant's undisputed evidence removes even the conjecture. Conceding that the car had a poor headlight, and that when the car passed Robbins avenue the motorman was not at his post, and that is all plaintiff's evidence does prove, then it is shown by undisputed evidence that the motorman was at his post when the car passed Chapman's and at the time of the casualty; that deceased had gone onto the track and laid down thereon, that on account of his position he could not be seen in time to stop the car and avoid striking him, and there is nothing else to indicate dereliction of duty on the part of the motorman. The mere fact that deceased was killed, if he was killed by the car, is not sufficient to charge defendant with negli-

gence. Yarnell v. Railroad, 113 Mo. 579; Harlan v. Railroad, 65 Mo. 25; Powell v. Railroad, 76 Mo. 83; Stokes v. Burns, 132 Mo. 223; Christy v. Hughes, 24 Mo. App. 275; Sappington v. Railroad, 95 Mo. 393; Hogan v. Railroad, 150 Mo. 52; Campbell v. Railroad, 175 Mo. 178; Glover v. Railroad, 153 Mo. 337. (2) The court erred in admitting evidence of the speed of the car. There is no allegation in the petition that speed was an act of negligence. If there had been an allegation in the petition that the motorman had negligently failed to stop the car after the dangerous position of deceased on or near the track was discovered, or might by the exercise of ordinary care have been discovered, and there was a question whether, at the speed the car was running, it could by the exercise of ordinary care have been stopped or not, then it might be pertinent. But there is no such allegation in the petition. Nor did plaintiff offer to introduce evidence that, considering the speed of the car, it might have been stopped after the dangerous position of deceased had been discovered, or by the exercise of ordinary care ought to have been discovered. In connection with this subject it is insisted that instruction 5 is erroneous. The instruction as originally asked by defendant is No. 7. The court refused it as asked, and modified it by striking out the words "even though the jury may believe the headlight and other lights in the car were dim, and that the motorman failed to give deceased any warning of the approach of the car," at the end of the instruction, and substituting for the foregoing words in quotation marks the words, "unless you further find that at the time the deceased was struck and injured the lights were so dim that by the exercise of ordinary care he could not have seen the car in time to step aside and avoid the injury, or that the car was run at such high rate of speed as to have caused the injury." There being no allegation in the petition that speed was negligence, it was error to give this instruction or admit evi-

dence of speed. And neither the exceptions to the evidence nor to the giving of this instruction are waived by failure to except to the first instruction given at the instance of the plaintiff. Ely v. Railroad, 77 Mo. 35; Barker v. Railroad, 126 Mo. 151; Schierbaum v. Schemme, 157 Mo. 22; Moffatt v. Conklin, 26 Mo. 457; Glass v. Gelvin, 88 Mo. 301; Mansur v. Botts, 80 Mo. 658; Yarnell v. Railroad, 113 Mo. 578; Krueger v. Railroad, 94 Mo. App. 462; Heinzle v. Railroad, 182 Mo. 559.

*A. R. Taylor* for respondent.

(1) There was sufficient evidence to take the case to the jury on the evidence presented for the plaintiff, of the negligent running of the car along a public highway in black darkness without sufficient light to enable a pedestrian to see and escape the car. The deceased, being lawfully on the track where he had aright to be, and where pedestrians walked, as defendant's evidence showed as well as plaintiff's, was not a trespasser or negligent *per se* in so doing. Henry v. Railroad, 113 Mo. 536; Riska v. Railroad, 180 Mo. 168; Eckhard v. Railroad, 190 Mo. 593. (2) The law presumes in favor of the deceased that he was in the exercise of ordinary care at the time he was struck and killed. This is a rebuttable presumption, but the burden is on the defendant to rebut this presumption. The evidence must be clear and conclusive. In this case the defendant introduces evidence of its motorman and conductor that deceased had adjusted himself on the track, the head on the west rail and his feet on the east rail, so he could not escape. This evidence of design and elaborate preparation runs amuck, to a degree, with the evidence of the defendant's witnesses about his maudlin drunken condition. Most people, by observation or experience, well know that an undue portion of intoxicating liquors has a tendency to incapacitate the mind for ac-

curate arrangement. The mind, to a degree, ceases to conceive method and order. One would hardly expect the man whom Miss Birdie Stille followed 900 feet in the night's darkness and peril, and in forgetfulness of the devastation to her spring hat, would be the same man who could use as much care and design in arranging his body for the execution as is told of Julius Caesar, when he folded his robe about himself to die at the foot of Pompey's statue. The jury did not believe, under this evidence, that this death was a sequence of the story recited by this witness. The same reasoning may be applied to the stilted story of the motorman and conductor. At last it was a question for the jury whether or not they should accept their story as true. The presumption of due care on the part of the deceased was not conclusively overthrown by such evidence. The jury might have believed the motorman and conductor on this issue, and they might not, with reason for either conclusion. (3) The presumption that a deceased person killed by a street car was exercising due care is not overthrown, even by the fact that he is seen to walk on a track ahead of an approaching car, and is killed by the car, though at the time deceased was carrying an umbrella pulled down close over his head to avoid rain. Riska v. Railroad, 180 Mo. 188; Weller v. Railroad, 164 Mo. 199; Eckhard v. Railroad, 190 Mo. 613; Buesching v. Gas Co., 73 Mo. 233. (4) But if the jury should have given full faith and credit to the motorman's and conductor's story, fishy and incredible as it was; and should also believe, as the conductor testified, that the deceased could have been seen on the track 75 feet ahead of the car, or Schambeck's, the road officer's, evidence, that, as deceased lay on the track in mute and drunken oblivion, he was readily to be seen 40 feet ahead of the car; and also believed the motorman when he says he stopped within 32 feet, here, again, we find, on the evidence of the defendant, a case of liability. For the law is now settled in this

State that, however negligent a man may be in being upon a railroad track, yet if the operatives of the car saw him, or, in the exercise of ordinary care, would have seen him in peril and could thereafter, in the exercise of such care, have saved him, still the railroad is liable. Seaboard Co. v. Tolson, 39 U. S. 559; Railroad v. Ives, 144 U. S. 429; Reardon v. Railroad, 114 Mo. 406; Chamberlain v. Railroad, 133 Mo. 601; Klockenbrink v. Railroad, 172 Mo. 687; Scullin v. Railroad, 184 Mo. 707.

GANTT, J.—This is an action by Ellen Goff, the widow of Patrick Goff, for the negligent killing of said Patrick Goff by the defendant company by a street car operated by the defendant company, on the night of March 12, 1901.

The petition alleged, among other things, that at the time alleged Ferguson avenue, at the place mentioned in the petition, was an open public highway in St. Louis county, Missouri, and that at said time plaintiff was the lawful wife of Patrick Goff; that on the 12th day of March, 1901, in the evening and whilst it was dark, plaintiff's husband was lawfully upon Ferguson avenue, where defendant's railway track was upon said highway, when defendant's servants in charge of its car carelessly and without keeping a lookout ahead, and without giving any warning to plaintiff's husband of said approach of said car, ran said car on and against plaintiff's husband, crushing and killing him.

It is further averred that at the time of so killing her husband, defendant, and its servants in charge of said car, were running said car upon said highway without any headlight or sufficient light to enable her husband to see and avoid it, which negligence directly contributed to cause the injury and death of plaintiff's said husband.

It is further averred that at the time of the injury

and death of her husband, defendant's motorman and conductor were not at their posts of duty and in position to control or stop said car, and thereby failed to control or stop said car and avert the injury and death of plaintiff's husband, which negligence was a directly contributing cause to the injury and death of her husband. The action accrued to the plaintiff to sue for a recovery of $5,000, according to the statute in such cases, for which sum plaintiff prays judgment according to the statute in such cases made and provided.

The answer was a general denial and a plea of contributory negligence, in that, that said Patrick Goff negligently and carelessly entered upon defendant's said railroad track and thereon laid down in such place on said track on a dark night as to make it impossible for those in charge of defendant's car to prevent and avoid collision with him.

The reply was a general denial.

The evidence tended to prove all the formal facts alleged in the petition: That the plaintiff was the widow of the deceased at the time of his death. That Ferguson avenue, at the place where deceased was killed, was a public highway in St. Louis county. That defendant had a railway track on Ferguson avenue, on which it operated the car by which the deceased was killed; that this car ran north-and-south along Ferguson avenue, a distance of three and one-quarter miles, its southern terminus being De Baliviere avenue, and its northern terminus being the St. Charles Rock Road. That Patrick Goff was killed on the night of March 12th, 1901, on the track of the defendant's said railroad. On that night a misty rain was falling. The deceased had been engaged during the day at his avocation as a huckster of vegetables; he would buy his merchandise in the city and sell it from a wagon about the suburbs of St. Louis. He lived on Pennsylvania avenue, a north-and-south street about 1550 feet west from Ferguson avenue, on which the defendant maintained

and operated its electric railway. The defendant had a single railway track on this avenue. On the day of his death, after his work was over and he had taken his supper at his home with his family, Patrick Goff left home to go to the St. Charles Rock Road, a highway running northwest from St. Louis to St. Charles, for the alleged purpose of buying feed for his horses. He was next seen by the witness for the defendant, in a saloon near the northern terminus of the railroad on Ferguson avenue, where he drank a glass of beer, and inquired the time at which the car was due. After that he was seen by an acquaintance as he was walking along St. Charles road towards the terminus and about 75 feet therefrom. He and this acquaintance exchanged greetings as they passed each other, and according to this witness there was no sign of drunkenness upon him. This was near eight o'clock p. m.

At this point the defendant's evidence tended to prove that on the day of the accident, Fred Koehn saw Goff, the deceased, under the influence of liquor. Mrs. V. V. Curtis, Mrs. Rose Kline and Mrs. Mary Grace testified that between six and seven o'clock p. m., on that day, they saw Patrick Goff and he was drunk. Jacob Walter, a saloon-keeper, whose saloon is on the St. Charles Rock Road near the northern terminus of Ferguson avenue, testified that he saw Goff about 7:30 p. m., and he was under the influence of liquor at that time. Miss Birdie Stille, a sister of the motorman, testified that she lived at that time near the northern terminus of Ferguson avenue, and on that evening was going to attend choir practice at a church near there. She went to an old car which had been placed there as a waiting room, to await the coming of the car, which left that point at 8 p. m. She arrived some minutes before the car was due. It was very dark and raining a little. While she was waiting, a man came within a few feet of her, and she saw by his actions, and because he was talking and muttering to himself, that he was in-

toxicated. He started down the track south towards the bridge on Ferguson avenue, and fearing that he might fall between the ties on the bridge, and possibly be run over by the car, then nearly due, she followed some distance behind him almost to the bridge, where he turned off of the track on to the road; she then went back to the old car to wait for her train. She could see the man by the occasional flashes of the lightning. When the car came she got onto it and went to her destination.

The evidence without dispute was that this car made the round trip of six and one-half miles every half hour and ran at an average speed, including stops, of thirteen miles an hour. The evidence tended to show that the place where deceased was killed was by measurement one thousand feet south of the St. Charles Rock Road terminus and about fifty feet south of the bridge or trestle.

On the part of the plaintiff the evidence tended to show that the car was running rapidly when it passed Robbins avenue; that the light on the front of the car was very dim and at the time a drizzling rain was falling, and the night was very dark. There was evidence tending to show that the light on the front of the car was an electric bulb giving a sixteen-candle-power light. There was other evidence tending to show that there was a headlight on the front of the car. There was evidence that the track of the defendant was laid in the ordinary form of a railroad through the country; that the dirt was thrown up in the center of the track. There as evidence also tending to show that pedestrians walked on this track. The defendant's witness Herr testified to having walked over the track from Robbins avenue to St. Charles Rock Road, some twenty or thirty minutes before Goff was killed. On the part of the defendant, the evidence tended to show that the witnesses on the evening of the accident, and on the trip on which the accident occurred, saw this car coming up the grade north towards Robbins avenue at a distance of one-half

mile from the witnesses; that it was brilliantly lighted and had a headlight of the ordinary kind used on street cars; that in coming up the grade the use of the power in propelling the car had a tendency to cause the lights to shine less brightly, but immediately on getting on to a level or going down grade the brilliancy of the lights was restored; that on that trip there was but one passenger aboard, Mr. Albert Chapman. The motorman, conductor and Mr. Chapman testified that the motorman was at his post on the front platform when the car passed Robbins avenue; that at 600 or 700 feet north of Robbins avenue, and after the car had got on the steep down grade, it was stopped by the motorman and Mr. Chapman got off at his residence there. It was 2200 feet from Robbins avenue to the place where the accident occurred and about 1500 or 1600 feet from Chapman's residence. The evidence tended further to show that when Chapman got off, there being no other passenger, the conductor went on to the front platform with the motorman. Both the motorman and the conductor saw a may lying on the track just about the beginning of the first curve in the road south of the St. Charles Rock Road. The motorman testified that he saw the deceased when he was about 30 feet from him and the conductor saw him when he was about ten feet distant. The motorman was already engaged in setting the brake when the conductor saw the man. According to their testimony the man was lying crosswise of the track with his head on the west rail and his feet on the east rail. The motorman testified that he stopped his car in about thirty-two feet; that immediately upon seeing the deceased on the track, he set his brake and stopped his car as soon as he could. The front wheel of the fore-wheel truck did not run over the man's head, but must have pushed it off of the rail. The evidence tended to show that the man was killed by a bolt in the frame of the truck which projected down below the frame near the wheels of the truck; this bolt struck

the deceased in the eye, penetrating the brain, and killed him instantly.    There was evidence tending to show that the clothing of the deceased looked as if he had wallowed in the mud.    There was also evidence that when the deceased was discovered he had on only one arctic overshoe.    An artic overshoe was found in the dirt road somewhere along the track.    There was evidence tending to show that this shoe was the mate to the one on Patrick Goff's foot.    On the contrary, there was evidence on the part of the plaintiff that the shoe found and offered in evidence by the defendant, could not have been worn by Patrick Goff.    The conductor, John Molden, testified that the light from the car that night extended along the track twenty-five yards or seventy-five feet.    The roadmaster, Schemback, testified that the motorman, with the light from the car, could have seen the deceased lying on the track forty feet ahead of the car.    On the part of the plaintiff there was much evidence tending to prove that the deceased was not intoxicated on the day of his death, nor up to a very few minutes prior thereto.    These were substantially the facts developed on the trial.    Other circumstances may be adverted to in the course of the discussion of the evidence.    The objections to the instructions will be examined in the order in which they are made by the counsel for the defendant.

I.    Did the circuit court err in submitting the case to the jury on the evidence?    The testimony shows that the track of the defendant was laid in and along a public road leading from the suburban subdivision known as Hazel Hill to the St. Charles Rock Road, and designated in the evidence as Ferguson avenue.    The fact that a railroad track was laid in this public highway, did not make Patrick Goff a trespasser in walking upon it.    Pedestrians have the undoubted right to use a street or a public road for all ordinary purposes,

to walk across it if so inclined; that Patrick Goff had a right to walk upon any part of this road that he saw fit upon exercising due care and caution, there can be no question under the decisions of this court. [Henry v. Railroad, 113 Mo. l. c. 535, 536; Winters v. Railroad, 99 Mo. 517; Scullin v. Railroad, 184 Mo. 707.]

When the plaintiff closed her case in chief no witness had testified to seeing Patrick Goff at the time he was struck and killed by defendant's car. The law presumes that he was in the exercise of ordinary care at the time he was struck and the evidence on the part of the plaintiff was to the effect that Howard Bradford saw him within thirty minutes within the time of his death, and he was without the sign of intoxication at that time, and there was no evidence that after he was so seen by Bradford he had taken anything to make him drunk. The deceased then being lawfully on the track, and where it appeared other pedestrians walked, he was not a trespasser or negligent *per se* in being on the track. [Buesching v. Gaslight Company, 73 Mo. l. c. 233; Eckhard v. Railroad, 190 Mo. l. c. 613, 614; Rapp v. Railroad, 190 Mo. 144.]

It is true that the presumption that the deceased was in the exercise of ordinary care at the time he was struck and killed is a rebuttable one, but the burden is on the defendant to rebut this presumption. Beginning with this presumption in favor of the exercise of ordinary care by the deceased and the fact that he was not a trespasser in walking upon defendant's track in the public highway and taking into account the evidence on behalf of the plaintiff tending to show that the car was insufficiently lighted to enable a pedestrian to see, and the absence of all evidence tending to show that any signals were given the deceased of the approach of the car and the darkness of the night and the duty which the law devolves upon those who operate dangerous machines upon and along the public highways to exercise ordinary care and prudence in order    to

avoid collisions with and injury to others who have a
right to use the highway, especially at places where
the presence of such persons might reasonably be ex-
pected upon the track, we think the court did not err
in submitting to the jury whether the defendant was
not guilty of negligence in running this car along the
said avenue on a dark night without sufficient light to
enable a pedestrian to see and escape the car. While
it is true that witnesses for the defendant testified that
the car was brilliantly lighted, it was for the jury to
determine whom they would believe in view of all the
evidence. The fact that the motorman and conductor
and other witnesses did testify that the car was well
lighted did not justify the circuit court in taking the
case from the jury in view of the testimony on the part
of the plaintiff that the car was so dimly lighted that
one of the witnesses, the wife of the deceased, was in
danger of being struck by the same car because it was
not sufficiently lighted for her to see it.

As to the intoxication of the deceased rebutting
the presumption of care, it is sufficient to say that
that was also a question of fact which the jury alone
were authorized to determine, there being much evi-
dence on both sides of this question.

As to the other ground of negligence alleged in
the petition and upon which the court in its second in-
struction for the plaintiff submitted the case to the
jury, to-wit, that the defendant's motorman in charge
of said car failed to use ordinary care to look ahead of
said car for persons on the track and in danger of be-
ing injured by said car, and failed to control the move-
ment of said car so as to avoid injury to said Goff, the
testimony developed this state of facts on the part of
the defendant: Patrick Goff, according to the motor-
man's and conductor's evidence, was lying on the track
with his head on the west rail and his feet on the east
rail at the south end of the first curve in the road

south of the St. Charles Rock Road. The motorman testified that he saw the deceased on the track in front of his car when he was about thirty feet from him and that he immediately set his brake and stopped the car as soon as he could. John Molden, the conductor of that car, testified that he was on the car that night as conductor thereof; that the car had a reflector on it which was attached to the roof over the motorman's head; that the motorman was on the vestibule in front of the car; that he discovered the deceased lying on the track with his head on the west rail and his feet on the east rail, and the car was about ten feet distant from the deceased when he first saw him; that the lights on the car were good, and he could have seen twenty-five yards in front of the car. Schemback, the roadmaster, testified that a man could readily have been seen forty feet ahead of the car. The motorman testified that he stopped his car within thirty-two feet. Accepting this testimony of the defendant's witnesses as true that the car not only could have been stopped, but actually was stopped in a space of thirty-two feet, after the motorman says he saw the body of the deceased lying immediately across his track with his head on one rail and his feet on the other, and the testimony of the defendant's own witness, the conductor, that the deceased could have been seen in that position for seventy-five feet before the car struck him, and the testimony of the roadmaster that the body of the deceased could have been seen forty feet ahead of the car, it is apparent that it became a question of fact for the jury to determine whether the motorman in the exercise of ordinary care would have seen the deceased in a position of peril and by the exercise of ordinary care could have saved him. In Reardon v. Railroad, 114 Mo. 1. c. 406, it was said by this court: "The law of this State is thoroughly well settled that the defendant is liable even to a trespasser, if it fails to use ordinary care

and prudence to prevent injuring him, after discovering his peril,'' and this doctrine has been reasserted in numerous cases in this State. [Chamberlain v. Railroad, 133 Mo. l. c. 599; Klockenbrink v. Railroad, 172 Mo. l. c. 687; Scullin v. Railroad, 184 Mo. l. c. 707.] But in this case, the deceased was not a trespasser. He was on a public highway. But it must be conceded that if the testimony of the conductor and motorman was true, he was not in the exercise of ordinary care and prudence when he laid himself down upon and across the defendant's track. But he was on a public highway, and the defendant was operating a railroad longitudinally along that highway, and it was shown that pedestrians walked upon the defendant's track, and in such case it was the duty of the motorman to exercise ordinary care and prudence in keeping a lookout for persons that might be upon the track, and if the motorman saw or in the exercise of ordinary care in the circumstances would have seen the deceased lying on the track in time to have stopped his car without injuring him, but negligently failed to do so, then the company is liable. And as the defendant's own witnesses and servants testified that the man could have readily been seen on the track from forty to seventy-five feet ahead of the car and that the car was actually stopped in thirty-two feet, we think the evidence justified the court in submitting the case to the jury upon this allegation of negligence. [Rapp v. Railroad, 190 Mo. 144.]

Our conclusion is that the court did not err in submitting the case to the jury upon the evidence developed on the trial.

II. For the plaintiff the court gave three instructions presenting the issues of fact on the evidence, and two formal instructions, one defining ordinary care, and the other stating that the burden was on the defendant to prove contributory negligence. Neither of

these instructions was objected to and are not criti-
cised by defendant's counsel on this appeal, and we
must, therefore, assume that they were correct. On the
part of the defendant, the court gave fifteen instruc-
tions. Seven of these were given in the language in
which they were asked and without modification, to-
wit: Numbers 1, 2, 3, 7, 11, 12 and 15. The court made
some modifications to instructions numbered 4, 5, 6, 8,
10, 13, and 14. These instructions cover seven pages
of printed matter and are as follows:

"1. In this case plaintiff alleges in her petition that
while her husband, Patrick Goff, was lawfully on a
public highway called Ferguson avenue in St. Louis
county, Missouri, he received an injury which caused
his death by defendant's negligence in the following
respects, to-wit:

"1st. That defendant's employees in charge of
one of defendant's cars carelessly and negligently fail-
ed to keep a lookout ahead and by reason of such fail-
ure ran onto said Goff and killed him.

"2nd. That said employees negligently failed to
give said Goff warning of the approach of said car,
and in consequence thereof ran onto said Goff and kil-
led him.

"3rd. That at the time said Goff was so killed de-
fendant and its employees negligently ran said car
without a headlight or sufficient light to enable said
Goff to see said car and avoid it, which alleged negli-
gence directly contributed to cause the injury and
death of the said Goff.

"4th. That at the time of the injury and death
of the said Goff defendant's motorman and conductor
were not at their posts of duty in a position to control
or stop said car, and thereby failed to stop or control
said car, which alleged negligence directly contributed
to the injury and death of the said Goff.

"With respect to the foregoing allegations of neg-

ligence you are instructed that the burden of the proof is upon the plaintiff throughout the whole case, to establish by the greater weight of the evidence, one or more of the acts of negligence charged, and that such act or acts were the direct, efficient, and proximate cause of the death of the said Goff, and unless the plaintiff has so proven, by the greater weight of the evidence to your satisfaction, she is not entitled to recover, and the verdict must be for the defendant.

"2. Defendant in its answer denies that the said Goff was killed by defendant's car, and also denies all the acts of negligence charged by plaintiff in her petition as having been committed by defendant. And defendant, for a further defense, states in its answer that the said Goff directly contributed to his own death by negligently going onto defendant's track in the night time and negligently lying down thereon, and that had he not negligently done so would have not been killed. Plaintiff denies these acts of negligence in her replication.

"3. If the jury believe from the evidence that at the place where the deceased was struck and killed on defendant's railroad, said railroad runs along one side of the road and not on the traveled part by a ditch and that there was no other road crossing said road at that point, then the motorman had a right to presume that the track was clear and unobstructed, and had a right to run his car with that presumption in view, and if after the motorman saw the deceased, or by the exercise of ordinary care might have seen him, he did all he could with the appliances he had on hand to stop the car before the car struck the deceased, then the defendant is not liable in this action and the jury will so find, even though the jury may believe that the car at the time was being run at a high rate of speed.

"4. If you believe from the evidence that said Goff in the night time went onto defendant's track and lay

down thereon, and the defendant's employees in charge of said car which struck the said Goff, by reason of the darkness of the night and the position of the said Goff on said track, and defendant's employees were exercising ordinary care and failed to see said Goff until the car was so close to him that said employees could not stop the car in time to avoid striking said Goff, and that after said employees did see, or by the exercise of ordinary care could have seen him, they used all the means at their command in the time they had to stop the car and the said Goff's own acts of negligence on his part directly contributed to his death, in such case she cannot recover and your verdict must be for the defendant.

"5. Although the jury may believe that the deceased was killed by being run onto by defendant's car on a railroad track running alongside a public road, yet, if the jury further believe that the place where the alleged casualty occurred was not in a populous city, but was in the country where the population was not dense, and that the railroad track ran along said public road at one side thereof, and was separated from the traveling part of said public road by a ditch or gully; and that at the time of the night when said casualty occurred, said public road was usually unfrequented and used by few persons; that the night was dark and that deceased was lying down on the railroad track; that the motorman at the time in charge of said car was watching for obstructions or persons on the railroad track; and that as soon as said motorman saw deceased, or by the exercise of ordinary care could have seen him, lying on the track, he used all the means at his command which he should use to stop the car and avoid running onto the deceased; then the verdict must be for the defendant; unless you further find that at the time the plaintiff was struck and injured the lights were so dim that by exercising ordinary care he could

not have seen the car in time to step aside and avoid the injury, or that the car was run at such a high rate of speed as to have caused the injury.

"6. If you believe from the evidence that at and immediately prior to the time that defendant's car struck the said Goff, the motorman of said car was on the front platform of said car, and that said front platform was his post of duty, then you cannot find for the plaintiff on the ground that defendant's employees were negligent in failing to be at their post of duty on said car.

"7. In determining whether or not defendant's motorman saw or by the exercise of ordinary care could have seen deceased on defendant's track in time to stop the car before striking deceased, the jury should take into consideration the darkness of the night, the place where the accident occurred, the frequency or infrequency of persons being on the road adjoining said track or on said track at that time, the condition of the railroad track at that place, the kind of a headlight or other light, if any, on the car, whether the motorman was at his post or not, and the efforts the motorman made, if any, to stop the car, and if from the consideration of these facts you believe that the motorman did not see the deceased, or by the exercise of ordinary care could not have seen him, in time to stop the car before striking him, then the verdict must be for the defendant.

"8. If you believe from the evidence that defendant's motorman at the time the said car ran onto the said Goff was on the front platform of the car, and that said position was his proper post on the said car, and that he was at that time keeping a lookout ahead, and that on account of the darkness of the night and the position of the said Goff on the defendant's track he could not see said Goff in time to stop the car and avoid striking him, and that when said motorman did

see said Goff, he used all the means in his command which he could use in the time he had to stop the car, and that notwithstanding such efforts on his part the car struck the said Goff and killed him, then you cannot find for the plaintiff on the ground that defendant's employees were negligent in failing to keep a lookout ahead.

"10. Although you may believe that defendant's employees in charge of the car which struck the said Goff failed to give any warning of the approach of the car, yet they were not bound to give any warning until they discovered said Goff in a place of danger, and if, on account of the darkness of the night, and the position of said Goff on defendant's track, said employees failed to see said Goff until the car was so close to him that a warning could not be given, or, if given, would be useless, then you cannot find for plaintiff on the ground that defendant's employees negligently failed to warn said Goff of the approach of the car.

"11. It is your imperative duty, devolved upon you by your oaths, to try this case and decide it precisely as you would were it a suit between two individuals. The fact that plaintiff is an individual and defendant a corporation should not make any difference with you. In considering and deciding this case you should look solely to the evidence for the facts, and to the instructions of the court for the law of the case, and find your verdict accordingly without reference to who is plaintiff or who defendant.

"12. Although the jury may believe that deceased was intoxicated and while in that condition he went onto defendant's track, and by reason of such intoxication laid down thereon, yet such intoxication will not excuse the deceased from the consequence of his own negligence, if any, in going onto said track and lying down thereon.

"13. You are instructed that the defendant was

not under any obligation to furnish its car with any particular kind of headlight, and if you believe from the evidence that the car which struck the said Goff was furnished with any kind of a headlight, and that said car was at the time lit up with lights on the inside, and was provided with windows in front through which lights could and did shine, and that a person possessed with ordinary eyesight could by looking have seen the approach of the car in time to leave the track and avoid being struck by the car, then the plaintiff cannot recover on the ground of there being an insufficient light.

"14. Although the jury may believe that defendant's servants in charge of the car which it is alleged struck and killed said Goff were guilty of one or more of the acts of negligence described in the petition, yet, if the jury further believe that the said Goff, by his acts in going on defendant's track, directly contributed to and was the proximate cause of said injury, then you will find the issues for the defendant.

"15. You are the sole judges of the weight of the evidence and the credibility of the witnesses. In determining the credibility of a witness or the weight and value which you should give to his or her testimony you should take into consideration the character of the witness, his or her manner on the witness stand, his or her interest if any in the result of the trial, his or her relations to or feeling towards the plaintiff or defendant, the probability or improbability of his or her statements, as well as all the facts and circumstances in evidence. If, upon a consideration of all these facts and circumstances and all other facts and circumstances in evidence, you believe that any witness has wilfully or intentionally testified falsely to any material matter in issue you should disregard such false testimony, and may disregard all the testimony of such witness.''

Some criticism is made of the court's modification

of the instructions, and the defendant complains of these changed, but after a careful examination of the fifteen instructions given by the court, we are of the opinion that the defendant has no ground of complaint on this score; indeed, we think that the law of the case on the part of the defendant could well have been stated in not exceeding five declarations of law applicable to all the material facts upon which the defense was based.

The defendant also complains of the refusal of other instructions, but this court has time and again held that it was not error to refuse instructions, even though they were correct statements of the law, when the instructions given fully covered the case, and there was no error in refusing these additional instructions, nor in the modifications of those that were given when all read together. Upon the whole record, we think the case was fairly submitted to the jury and their verdict upon the controverted facts ought not to be disturbed. The judgment of the circuit court is therefore affirmed.

*Burgess, P. J.*, and *Fox, J.*, concur.