## SUSAN P. CLOVER, Respondent, v. JOPLIN & PITTSBURG RAILWAY COMPANY, Appellant.

**Springfield Court of Appeals, January 3, 1910.**

1. **APPELLATE PRACTICE: Demurrer to Testimony.** Where defendant files a demurrer to the testimony, which is overruled, and a verdict is rendered against him, on appeal the judgment will be affirmed if the evidence will sustain the verdict on any theory of the law applicable thereto.

2. **NEGLIGENCE: Humanitarian Doctrine: Street Railways: Duty of Motorman.** The humanitarian doctrine requires that the motorman in charge of propelling a street car along a populous street in a city shall at all times use ordinary care to discover whether or not persons or vehicles may be upon the track in front of him.

3. ————: ————: ————: ————. Should a motorman discover a vehicle within the rails in front of him, it would be his duty to give notice in some way that the car was coming and give the party in charge of the vehicle an opportunity to get off the track. If the party did not get off the track, and it became apparent to the motorman that he did not intend to get off, it would be his duty to stop the car, rather than run into and injure him. And it is his duty to keep his car under control so that it can be stopped before the injury is inflicted.

4. ————: ————: ————: ————: **Rights in Streets.** In a populous section of the city a street car motorman has no right to expect a clear track, for the residents of the city have the right to use the street as well as the street car company, and it is not negligence *per se* for one to drive within the rails of the track.

5. ————: ————: ————: ————: **Duty to Have Lights on Cars at Night.** When running a street car at night, the exercise of ordinary care would require the company to keep a light upon the car, which would enable the motorman to see ahead a sufficient distance that in case he should discover anyone upon the track he might give notice by sounding the gong or otherwise, and give the party an opportunity to get off the track.

6. ————: ————: ————: ————. Where the evidence shows that plaintiff traveled in a buggy driven in a walk for some distance on the track before being struck and the motorman

could see forty or fifty feet in front and could stop his car in twenty feet and there is no explanation as to why he did not see plaintiff's perilous position and stop the car and prevent the injury, the conclusion is irresistible that he was not using ordinary care, and that the want of such care, after plaintiff's position became perilous, caused the injury.

7. ————: ————: **When Plaintiff's Contributory Negligence is not Material.** Where the evidence is sufficient to authorize a recovery under the humanitarian rule, it is unnecessary to consider the question of contributory negligence of the plaintiff.

Appeal from Jasper Circuit Court.—*Hon. David E. Blair,* Judge.

AFFIRMED.

*Perkins & Blair* and *Edward C. Wright* for appellant.

(1) The demurrer to the testimony at the close of plaintiff's testimony, should have been sustained. Hausmann v. Hope, 20 Mo. App. 193; State v. Goetz, 131 Mo. 675; Morrow v. Pullman Car Co., 98 Mo. App. 351; Hendley v. Globe Co., 106 Mo. App. 20; Gee v. Van Natta Co., 105 Mo. App. 27; Lenix v. Railroad, 76 Mo. 86; Holmes v. Leadbetter, 95 Mo. App. 419; Fellenz v. St. Louis Co., 106 Mo. App. 154; Asphalt Co. v. St. Louis Co., 102 Mo. App. 469. (2) Upon the entire record, it appears conclusively, that no cause of action vested in the plaintiff and the only judgment possible under the law and the evidence, was for the defendant. Weaver v. Benton Co., 60 Mo. App. 207; Barrie v. St. Louis Co., 102 Mo. App. 87; Conrad Grocer Co. v. Railroad, 89 Mo. App. 534; Kelley v. Railroad, 75 Mo. 140; Hauselman v. Railroad, 88 Mo. App. 123; Smith v. Railroad, 61 Mo. 558; Meyers v. Railroad, 103 Mo. App. 268; Hogan v. Citizens Co., 150 Mo. 36; Zumalt v. Railroad, 175 Mo. 288; Stepp v. Railroad, 85 Mo. 229; Reno v. St. Louis Co., 180 Mo. 469; Rees v. St. Louis Co., 179 Mo. 1; Hickman v. Union Co., 47 Mo. App. 65; Bunyan v. Citizens' Co., 127 Mo. 12; Fanning

v. St. Louis Co., 103 Mo. App. 151; Moore v. Lindell Co., 176 Mo. 528. (3) Even if the record discloses negligence on the part of the appellant, it is still true that its violation of duty does not render it liable for an injury resulting from the injured person's own carelessness and respondent was guilty of such negligence in failing to stop and look and listen, before going upon appellant's track, as to bar her of recovery. McManamee v. Railroad, 135 Mo. 440; Hudson v. Railroad, 123 Mo. 445; Payne v. Railroad, 136 Mo. 562; Peterson v. Railroad, 156 Mo. 552; Sharp v. Railroad, 161 Mo. 214; Tanner v. Railroad, 161 Mo. 497; Reno v. St. Louis Co., 180 Mo. 469; Schmidt v. Railroad, 191 Mo. 215; Green v. Railroad, 192 Mo. 131; Kintag v. Railroad, 65 Fed. 391; Schofield v. Railroad, 114 U. S. 615, 29 L. Ed. 224.

*McAntire & Scott* for the respondent.

The evidence is sufficient to sustain the verdict. Goff v. Transit Co., 199 Mo. 694; Beier v. Transit Co., 197 Mo. 215; Rapp v. Transit Co., 190 Mo. 144; Murray v. Transit Co., 176 Mo. 183; Schafstette v. Railroad, 175 Mo. 142; Jett v. Electric Railroad, 178 Mo. 664; Baird v. Citizen's Railroad, 146 Mo. 265; Klockenbrink v. Railroad, 172 Mo. 678; Linder v. Transit Co., 130 Mo. 574; Buren v. Transit Co., 104 Mo. App. 224; Kolt v. Transit Co., 102 Mo. App. 143; Moore v. Transit Co., 95 Mo. App. 728; Noll v. Transit Co., 100 Mo. App. 367; Conrad Gro. Co. v. Railroad, 89 Mo. App. 391; Zander v. Transit Co., 206 Mo. 445; Storage Co. v. Transit Co., 120 Mo. App. 410.

COX, J.—Action for damages resulting from an injury claimed to have been caused by defendant's car striking a buggy in which plaintiff was riding and throwing her to the pavement on Seventh street in the city of Joplin, judgment for plaintiff for $750, and defendant has appealed.

The only error assigned by appellant is that the court erred in refusing to sustain a demurrer to the testimony; hence, if the evidence will sustain a verdict upon any theory of the law applicable thereto, the judgment must be affirmed, and, if not, the judgment must be reversed.

It is contended by appellant that the evidence conclusively shows that plaintiff was guilty of contributory negligence, and hence, she cannot recover. The respondent denies that plaintiff was guilty of contributory negligence and insists that even if she were, defendant is still liable under the humanitarian doctrine, that defendant's motorman either did or by the use of ordinary care upon his part could have discovered plaintiff's position of peril in time to have stopped the car and avoided the injury.

The humanitarian doctrine is so well grounded in the jurisprudence of this State that it is not necessary to elaborate upon it or to cite authorities to sustain it.

It is equally well settled that it is the duty of a court in passing upon a demurrer to the testimony to give the party the benefit of every reasonable inference that can be drawn from the testimony in his or her favor. Keeping this rule in view, and considering the testimony in this case in the light thereof, what do we find?

We shall first look to the question of the application of the humanitarian doctrine to the facts of this case. The undisputed facts, as far as necessary to consider in determining whether or not this is a proper case for the application of the humanitarian doctrine, are as follows:

Seventh street runs east and west in the city of Joplin and is crossed by Jackson and Sergeant avenues and other streets running north and south. Defendant's car line runs east and west along Seventh street. About ten or ten-thirty p. m., July 3, 1908, the plaintiff and her daughter were driving home in a high, open

buggy, drawn by a gentle, slow traveling horse. They drove south on Sergeant avenue to Seventh street and then turned west on Seventh street and drove toward Jackson avenue which was the next street west of Sergeant. Midway between Sergeant and Jackson avenues was an alley twenty feet in width. The lots are 125 feet deep, making the distance from Sergeant to Jackson avenue 270 feet. They drove in a walk and when within about fifteen feet of Jackson avenue their buggy was struck by a car of defendant passing from east to west along Seventh street, and plaintiff was thrown out and injured. The place of the accident is in a populous residence section of the city. As to these facts there was no controversy. The other testimony upon which plaintiff must rely to sustain her case under the humanitarian doctrine may be briefly stated, in substance, as follows:

For plaintiff, Josephine Clover, the daughter, testified, in part, to the effect that they drove south on Sergeant avenue to Seventh street and turned west on Seventh street and drove on the north side of the street car track. About the alley, or just beyond it, they drove on to the track and continued west on the track until near Jackson avenue, when they discovered a car coming very close behind them and they then tried to get off the track, but were struck by the car which caused the injury to her mother. That they were in about fifteen feet of Jackson avenue when struck. That she heard no bell of any kind before the car struck them.

John D. James, witness for plaintiff, testified, in substance, that he was walking west on the south side of Seventh street and saw the accident, and that they drove along on the north side of the track until they got to Jackson avenue, or approximately to it. On cross-examination, he stated he thought they must have been half-way between the alley and Jackson avenue when they commenced to turn diagonally across the

140 App.—27

street, and that they then drove toward the corner southwest at a pretty slow angle. The car struck the left hind wheel of the buggy first, the horse ran away with a part of the buggy and the women and one wheel were then on the south side of the track. He was near at the time of the accident and heard no bell, gong or warning of any kind. The car was running very fast—about thirty miles per hour.

Plaintiff testified that when near Jackson avenue they went on to the track and that they hadn't more than got on to the track when her daughter hallooed, "There is the car." That they drove diagonally across the track and were almost across when struck. They were driving slowly until they discovered the car when the daughter began to urge the horse to try to get across the track. She heard no bell or warning.

William M. Baker, a motorman of defendant in charge of propelling the car was put on the stand by the defendant, and testified, in substance, as far as we think material to the phase of the case now under consideration, that there was a light on the front end of the car and that he could see forty to fifty feet—that he did not see the buggy drive on to the track, but that it drove on from the north and went across diagonally, and was almost across when he saw it, and that his car was then within eight or ten feet of the buggy when he immediately applied the brake but could not stop before the car struck the buggy. That he was running not more than six miles per hour, and that at that rate he could stop the car in twenty feet by reversing.

There was evidence tending to contradict some of this testimony, but we cannot now weigh it and pass on its preponderance.

All the witnesses who testified in relation to the manner in which the horse was driven across the track agreed that they passed diagonally across from north to south—that when struck the horse was going in a walk. This being true, it would necessarily take some little

time for them to pass so far over from the north side that the car would strike the left hind wheel first and throw the buggy and its occupants to the south of the track. Hence, if the version of the old lady be accepted as showing the true state of facts, then her testimony, in connection with that of the motorman, would sustain a verdict upon the humanitarian doctrine. This doctrine requires that the motorman, in charge of propelling a street car along a street in a city, shall use, at all times, ordinary care to discover whether or not persons or vehicles may be upon the track in front of him, and in a populous section of the city, as the evidence shows the place of this accident to have been, he has no right to expect a clear track for the residents of the city have the right to use the street as well as the street car company, and it is not negligence, per se, for one to drive within the rails of the track, and should the motorman of a car discover a vehicle in this position it would be his duty to give notice in some way that the car was coming, and give the party in charge of the vehicle an opportunity to get off the track; then if the party did not get off the track, and it became apparent to the motorman that he did not intend to get off, it would be his duty to stop the car rather than run into and injury him. [Goff v. The Transit Company, 199 Mo. 694, 98 S. W. 49, and cases there cited.] And when running a street car at night, the exercise of ordinary care would require the company to keep a light upon the car which would enable the motorman to see ahead a sufficient distance, that in case he should discover anyone upon the track, he might give notice by sounding the gong or otherwise, and give the party an opportunity to get off the track, and it is the duty of the motorman to keep his car under control so that if a party on the track does not get off when warned, the car can be stopped before injury is inflicted. [Baird v. Citizens Railway Co., 146 Mo. 265, 48 S. W. 78.]

This is a reasonable rule, for the preservation of human life is of vastly more importance than the preservation of an established time schedule in the running of street cars.

But laying aside the testimony of the plaintiff and following the rule that in this case she is entitled to the benefit of the strongest evidence in her favor, and to every reasonable inference therefrom in her favor, and accepting the testimony of either the daughter or Mr. James, the jury would be warranted in finding that these parties had driven on the track in front of the car for some distance before being struck, and if this were true, then all doubt as to the application of the humanitarian doctrine to the facts in this case is removed. If it be true that plaintiff traveled in a walk for some distance on the track before being struck, and the motorman, as he testified, could see forty to fifty feet in front, and could stop his car in twenty feet, and there is no explanation as to why he did not see their perilous position and stop the car and prevent the injury, the conclusion is irresistible that he was not using ordinary care, and that the want of such care upon his part after this plaintiff's position became perilous, caused the injury. Having reached this conclusion upon this phase of the case, a discussion of the evidence which tended to show that plaintiff was guilty of contributory negligence becomes unnecessary, for if we concede, as we do, when the humanitarian doctrine is applied, that the plaintiff was guilty of contributory negligence, the defendant is still liable, and the judgment will, therefore, be affirmed.  All concur.